**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Lance E. EISENBERG and T. Lamar Chester, Defendants-Appellees.**

**In re GRAND JURY PROCEEDINGS.**

**Nos. 83–8013, 83–8041.**

United States Court of Appeals, Eleventh Circuit.

July 25, 1983.

As Corrected July 26, 1983.

---

William P. Gaffney, Asst. U.S. Atty., Atlanta, Ga., James J. Graham, Atty., Fraud Section, John F. DePue, Joel M. Gershowitz, Vincent Banbale, Appellate Section, Crim.Div., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Martin Baach, Washington, D.C., for Eisenberg.

Jeffrey B. Bogart, Atlanta, Ga., for Chester.

Earl J. Silbert, Washington, D.C., Mark J. Kadish, Atlanta, Ga., for defendants-appellees.

Before RONEY and CLARK, Circuit Judges, and GIBSON *, Senior Circuit Judge.

CLARK, Circuit Judge:

This case presents the question of what relief is appropriate in response to a prima facie showing that matters occurring before a grand jury were disclosed by a government representative in violation of Fed.R.

---

* Honorable Floyd R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Crim.P. 6(e).[1] This rule explicitly prohibits such disclosures, except in specified, limited circumstances, in order to protect the secrecy which is critical to the grand jury process.

In addition to preventing adverse pretrial publicity about a person who may be indicted and subsequently tried, secrecy protects the reputation of a person under investigation who is not indicted. The secrecy requirement also encourages reluctant witnesses to testify without fear of reprisals from those against whom testimony is given, prevents tampering with grand jury witnesses in an effort to alter their trial testimony, and permits the grand jury to deliberate free from the influence of publicity. Finally, secrecy prevents disclosures to persons who may be interested in the investigation if the facts are known or might attempt to escape if they have reason to believe certain indictments will issue. *See United States v. Procter & Gamble Co.,* 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077, 1081 n. 6 (1958), *citing United States v. Rose,* 215 F.2d 617, 628–29 (3d Cir.1954).

In this case, appellees Eisenberg and Chester are targets of grand juries in Atlanta and Houston. They filed motions in the federal district courts in Atlanta and Houston, in November of 1982, alleging government violations of Fed.R.Crim.P. 6(e). The Atlanta district court found that the newspaper articles submitted with the original petition and those filed subsequently

> reveal[ ] that highly prejudicial information concerning matters occurring before the grand juries has been given to the press, and that the source(s) of this information could only have been government agents or employees. In light of the irreparable harm that petitioners may have already suffered, the Court cannot look favorably on the government's contention that the investigation of these "leaks" is the sole responsibility of the Department of Justice and the Court. Petitioners were entitled to an opportunity to identify the government agents or employees responsible for the egregious violations of Rule 6(e) that have already caused them great harm.

Order of November 30, 1982. The court entered orders granting the following relief:

1) Said petition be filed under seal;

2) Until this Court directs otherwise all matters in connection with Misc. No. 82–1 shall be filed and maintained under seal, with service copies to be sent only to counsel for the government and to counsel for petitioners;

3) Extra-judicial publicity by government attorneys, officers, agents or employees concerning either (a) the grand jury investigation of unlawful offers to

---

1.   (2) **General Rule of Secrecy.**—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

(3) **Exceptions.**

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

Fed.R.Crim.P. 6(e)(2) and (3).

sell government information or (b) the grand jury investigations of either Lance Eisenberg or T. Lamar Chester shall cease immediately;

4) The government attorneys conducting the aforesaid investigations shall, at the next session of the said grand juries, instruct the grand jurors that they should disregard any news media or other public accounts of matters relating to their investigations;

5) Counsel for the government shall report to the Court within fifteen (15) days of this Order the following: (a) to whom instructions against extra-judicial publicity were given; (b) the substance of the instructions; and (c) the response of those to whom they were given;

6) Counsel for the government shall identify to counsel for petitioners each government attorney, officer, agent or employee with access to the aforedescribed grand jury matters;

7) Copies of all letters and Orders issued pursuant to Rule 6(e)(3) authorizing access to the aforedescribed grand jury matters shall be produced to counsel for petitioners within five (5) days of the entry of this Order, and copies of all letters and Orders issued after the date of this Order shall also be produced to petitioners within five (5) days of their execution; and

8) The information ordered disclosed to counsel for petitioners in items 6 and 7, and which may be disclosed under item 5, of this Order shall not be disclosed by them to their clients or to any other person; and counsel for petitioners shall take appropriate measures to insure the confidentiality of said information.

Order of November 11, 1982.

Accordingly, the government is hereby ORDERED to submit to this Court and to counsel for petitioners within thirty days of the date of this Order copies of affidavits executed by every government attorney, official, agent, and employee who has had access to or received, directly or indirectly, any information concerning matters occurring before any Atlanta federal grand jury investigation of petitioners, which affidavit shall include the following: (a) the date, time and method of communication for every communication with a news media representative; (b) the identity and affiliation of each news media representative; and (c) the substance, in detail, of each such communication.

Order of November 30, 1982. The Houston court ordered less extensive relief on November 24 and 29, 1982.[2]

---

2. In connection with the parallel proceeding in the district court in Houston, Judge Gabrielle K. McDonald entered orders on November 24, 1982 and November 29, 1982 as follows:

It is FURTHER ORDERED, that until this Court directs otherwise all matters in connection with Misc. No. 82–215 or Misc. No. 82–187 shall be filed and maintained under seal, with service copies to be sent only to counsel for the government and to counsel for petitioners; and

It is FURTHER ORDERED, that all extra judicial publicity by government attorneys, officers, agents or employees concerning either (a) the grand jury investigation of unlawful offers to sell government information, or (b) the grand jury investigations of either Lance Eisenberg or T. Lamar Chester shall cease immediately; and

It is FURTHER ORDERED, that the government attorneys conducting the aforesaid investigation shall, at the next session of the said grand juries, instruct the grand jurors that they should disregard any news media or other public accounts of matters relating to their investigation and base their decision to indict or not to indict solely on the evidence presented to them; and

It is FURTHER ORDERED, that the Government will submit to the Court then exercising jurisdiction over the instant matter the report or reports of the internal investigation(s) conducted by the Justice Department and the Office of Professional Responsibility upon completion of the investigation and before the presentation of an indictment to the Houston Grand Jury. The Court should be advised ten (10) days from receipt of this Order of the proposed duration of the investigation; and

It is FURTHER ORDERED, that the U.S. Attorney's Office shall submit to the Court then exercising jurisdiction over the instant matter, affidavits from the government attorneys, officials and FBI agents who may have been privy to the grand jury proceedings denying or affirming the disclosure of confidential information; and

It is FURTHER ORDERED, that at that time, the Court then exercising jurisdiction

The district courts in Atlanta and Houston relied on *In re Grand Jury Investigation (Lance),* 610 F.2d 202 (5th Cir.1980),[3] which is similar to the present case and guides our analysis. One distinguishing factor in *Lance* is that at the time of that appellate decision, Lance had been indicted. We are not aware of indictments which have issued in the present case. A more significant distinction is that the district court initially held that Lance failed to establish a prima facie showing of a Rule 6(e) violation and dismissed its motion for relief without an evidentiary hearing. On appeal, the court found that Lance had established a prima facie case and remanded the matter for a hearing. Here, the district court held there was a prima facie case of a Rule 6(e) violation and granted the extensive relief quoted above.

The government does not challenge the district court's finding of a prima facie case: that the media reports disclosed information about "matters occurring before the grand jury" and indicated that the sources of the information included attorneys and agents of the government. The government's appeal is limited to challenging the relief ordered which requires the government to furnish information to counsel for Chester and Eisenberg. Specifically, the government objects to paragraphs 6, 7 and 8 of the court's order of November 11, 1982 and to the November 30, 1982 order that the government submit to opposing counsel copies of affidavits executed by government employees. We conclude that the district court erred in requiring the government to disclose such information to counsel for Chester and Eisenberg prior to the issuance of indictments or the close of the grand jury investigation.

First, the district court was premature in finding that "highly prejudicial information concerning matters occurring before the grand juries has been given to the press, and that the source(s) of this information could only have been government agents or employees." Order of November 30, 1982. We believe that the articles in evidence before the district court only made a prima facie case for a Rule 6(e) violation. In *Lance,* we concluded that the prima facie case precluded denial of Lance's motion for relief without an evidentiary hearing. As *Lance* held, the presentation of a prima facie case shifts the burden to the government to come forward with evidence to negate the prima facie case. At this time, we set forth the proper steps for a district

will review the materials submitted by the government, the affidavits and the report to determine what further action, if any, is appropriate.

Order of November 24, 1982.

> Accordingly, it is ORDERED, ADJUDGED, and DECREED that the government produce to the Court for *in camera* inspection such of the following records as may exist:
> (i) Orders authorizing the summons of Houston Grand Juries 79–3, 81–1, 82–2 or any of them or of any other grand jury in the Houston Division of the Southern District of Texas which has received evidence in connection with an investigation of Mr. Eisenberg and Mr. T. Lamar Chester;
> (ii) Orders authorizing extension of any of said grand juries;
> (iii) Written authorization for any of said grand juries to transmit information to another of them or to any other grand jury, state or federal;
> (iv) Written authorization to disclose any matter before any of said grand juries to any government attorney or government agent;
> (v) Orders pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C) authorizing disclosure of any matters occurring before said grand juries;
> (vi) Written authorization for any government attorney or agent to appear before any of said grand juries;
> (vii) Records setting forth the method by which said grand juries were empanelled; and
> (viii) Records relating to any extension of any of the said grand juries; and
> (ix) Records identifying persons who, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(A)(i) or (ii), have been furnished information of matters occurring before the aforedescribed grand juries.

Order of November 29, 1982.

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), the newly created Eleventh Circuit adopted as binding precedent the decisions and opinions of the Former Fifth Circuit of which it had been a part prior to October 1, 1981, subject to the precedent being set aside by the court sitting en banc.

court presented with such a prima facie case.

■ A prima facie showing of a Rule 6(e) violation requires the district court to entertain the petition and order the government to take steps to stop any publicity emanating from its employees. This is commendably accomplished by the first four paragraphs of the district court's order of November 11, 1982. Next, the district court should determine whether the government was responsible for the pre-indictment publicity and whether any information disclosed by the government was about "matters occurring before the grand jury." In this case, the government informed the court that it was conducting an investigation of the matters alleged in the motion for relief and requested an opportunity to furnish the information it obtained to the court *in camera.* The government has never disputed the authority of the court to require the government to report *to the court* and furnish names and affidavits *to the court,* as required in the orders.

Regrettably, the district court ordered the participation of counsel for the targets before conducting an *in camera* review of government's affidavits and other information obtained by their review. Permitting targets' counsel to receive the names of all government employees involved in this investigation serves no valid purpose at this stage. While the grand jury is in session, the only interests of the targets are to stop the prejudicial publicity and to seek the punishment of individuals guilty of Rule 6(e) violations. Counsel for the targets are entitled to have a record made of all actions by the government in response to the court's orders and of the court's *in camera* proceedings for appropriate future use.

In ordering the government to furnish targets' counsel the information described, the district court did not consider the limitations on its supervisory role over grand juries and, correspondingly, the separation of powers between the executive and the judiciary. The grand jury is a unique body and is not a part of either the executive or

judicial branch. The Supreme Court has observed:

> The institution of the grand jury is deeply rooted in Anglo-American history. In England, the grand jury served for centuries both as a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and as a protector of citizens against arbitrary and oppressive governmental action.

*United States v. Calandra,* 414 U.S. 338, 342–43, 94 S.Ct. 613, 617, 38 L.Ed.2d 561, 568 (1974). The fifth amendment of the United States Constitution provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . ." As applied, this includes all felonies. Article 2 of the Constitution vests the executive power of the government in the President, and section 3 of that article provides, "He shall take care that the laws be faithfully executed." Article 3 of the Constitution vests the judicial power of the United States in the federal courts and that judicial power is extended to the trial of criminal cases.

No statute prescribes the respective functions of the district court and the U.S. Attorney with respect to grand jury proceedings. Fed.R.Crim.P. 6 requires the court to summon grand juries and to rule on objections, appoint foremen, and further authorizes the court to punish as contempt of court a knowing violation of the rule. A leading opinion on the separation of powers issue is *United States v. Cox,* 342 F.2d 167 (5th Cir.1965). In *Cox,* a Mississippi grand jury returned an indictment charging perjury against two blacks, and upon instructions from the Attorney General the U.S. Attorney refused to sign the indictment. He was then held in contempt for disobeying the court's order to sign the indictment. The court held that the power to prosecute or not to prosecute was vested in the executive branch and said:

> It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of

the attorneys of the United States in their control over criminal prosecutions. 342 F.2d at 171. Recognizing that this case does not control our decision here because of the different facts, we are nevertheless mindful that courts are limited in their responsibilities for and powers over the grand jury.

This court recently stated in *United States v. Pabian:*

> [G]iven the constitutionally-based independence of each of the three actors— court, prosecutor and grand jury—we believe a court may not exercise its "supervisory power" in a way which encroaches on the prerogatives of the other two unless there is a clear basis in fact and law for doing so. If the district courts were not required to meet such a standard, their "supervisory power" could readily prove subversive of the doctrine of separation of powers.

*United States v. Pabian,* 704 F.2d 1533, 1536–37 (11th Cir.1983), *quoting United States v. Chanen,* 549 F.2d 1306, 1313 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). The grand jury serves as an investigative and accusatory body in collaboration with the U.S. Attorney.[4] Until an indictment is returned and a case presented to the United States District Court, the responsibility for the functioning of the grand jury is largely in the hands of the U.S. Attorney. This does not mean that the court cannot redress abuses by either the grand jury or a U.S. Attorney. The district court can provide relief after indictment to the petitioners to protect their constitutional right to a fair trial, just as it protects defendants' other constitutional rights.

Additionally, we do not think the court properly balanced the targets' interest in the information with the harmful effects that could follow the disclosure to targets' counsel of names of all the government employees involved in the investigation. The very location of the agents would disclose one aspect of the grand jury investigation. In the present case, one grand jury witness was killed after testifying before one grand jury and before recall to a second grand jury. The briefs also indicate that one of the government attorneys was threatened. There is nothing to suggest that the targets were in any way involved in these incidents.[5] Nevertheless, attorneys for the targets should not have the names of the government agents. Such information could lead counsel to call upon those government agents and attempt to interview them; news would spread that the attorneys for the targets were invading the province of the grand jury; and prospective witnesses could be intimidated from testifying.

■ Once the court determines that Rule 6(e) has been violated, the court may properly inform the targets' counsel of the names of the violators. Targets' counsel may then play a proper role in hearings involving imposition of contempt sanctions on government employees. As was stated in *Lance,* "[s]uch a hearing carries little threat of conflict with grand jury proceedings." 610 F.2d at 219. If an indictment is issued against their clients, counsel may obtain the record of the investigation of the Rule 6(e) violations. At that time, the indicted individuals can decide whether to move for dismissal of the indictment on grounds of improper government conduct and prejudicial publicity in violation of Rule 6(e).

■ We recognize the onslaught of publicity in this case arose in part from counsel for a target aiding the government in investigating an offer by a government agent to sell information concerning the grand jury.

---

**4.** Amongst the helpful books on the subject are: M. Frankel & G. Naftalis, *The Grand Jury, an Institution on Trial* (1977); L. Clark, *The Grand Jury, the Use and Abuse of Political Power* (1975); R. Younger, *The People's Panel: The Grand Jury in the United States, 1634–1941* (1963).

**5.** The file, newspaper articles, and prior appeal of orders relating to the Houston grand jury proceeding indicate the investigation by the government is far-flung and involves many possible targets.

We can understand the chagrin of counsel upon reading in the newspaper that the Attorney General had played part of the taped offer to the President, and someone had leaked the information to the press. Counsel had fulfilled his ethical obligations in furnishing the taped information to the government. We are not sure that the information on the tape pertained to "matters occurring before the grand jury" which was investigating Chester and Eisenberg, but the material was related to the investigation and the ensuing publicity was in part precipitated by the furnishing of the tape. All of this notwithstanding, our obligation is to consider the public interest involved in the secrecy of grand jury proceedings. This compels us to limit any requirement that the government furnish information to the extent necessary to stop the publicity and punish the offenders. We concluded that such information should first be furnished to the district court *in camera*. The court may subsequently determine whether a hearing should be held on the alleged government violations of Rule 6(e) and whether counsel for targets should be present at the hearing.

We place no restrictions on the power of the district court to order an investigation of the government's alleged violations of Rule 6(e). We can conceive of circumstances where a district court could seek the appointment of a special counsel to assist the court in determining whether Rule 6(e) violations had occurred. We place the burden of that undertaking on the district court, however, and prohibit pre-indictment participation by counsel for targets for the reasons we have stated. We will not countenance violations of Rule 6(e). Nor will we authorize counsel for grand jury targets having information which would permit them to embark upon a broad scale investigation of their own.

Counsel for appellees assert that we lack jurisdiction of the government's appeal, arguing no final judgment and no statutory right to appeal. The district court's orders granted the petitioners all of the relief requested by them and thus the decision of the court denying the government's motion for reconsideration terminated the case and was final pursuant to 28 U.S.C. sec. 1291. While the potential for post-judgment proceedings exists in this case, this does not render the decision of the court any less final. *See In re Grand Jury Subpoena (Kent)*, 646 F.2d 963, 968 (5th Cir. Unit B 1981).

Additionally, if one should consider that the district court's decision lacked finality, we have jurisdiction pursuant to the collateral order doctrine. *See Lance, supra,* at 213, *citing Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *In re Grand Jury (Scott),* 587 F.2d 889, 891 (7th Cir.1978), and *United States v. Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85, 88 (1971).

In this matter the court has Case No. 83–8013, in which the government appeals from the orders of the district court which have been discussed in this opinion. Additionally, the government filed a petition for writ of mandamus in Case No. 83–8041. In view of our disposition in Case No. 83–8013, we dismiss the government's petition for writ of mandamus in Case No. 83–8041.

We reverse and remand Case No. 83–8013 for further proceedings.

REVERSED and REMANDED.