## In re GRAND JURY PROCEEDINGS.

### Misc. No. 88–110 GG.

United States District Court,
D. Puerto Rico.

Oct. 17, 1988.

---

Roberto Busó Aboy, San Juan, P.R., for petitioner.

Ricardo R. Pesquera, Asst. U.S. Atty., Hato Rey, P.R., for respondent.

### OPINION AND ORDER

GIERBOLINI, District Judge.

On October 5, 1988 petitioner, Francisco Pujol, the target of a grand jury investigation, filed a motion seeking to disqualify the entire United States Attorney's Office and requesting the appointment of an independent special prosecutor. On that same date, the motion was entertained by the court at an in chambers conference and statements of both parties were heard. The court proceeded to stay the proceedings before the grand jury until further order and set petitioner's motion for hearing on October 11, 1988. Petitioner was

granted until October 7 at noon to file a memorandum of law and the government was ordered to reply by no later than October 11, 1988 at 9:00 a.m.

Thereafter, on October 7, 1988, petitioner filed a motion informing the court that there had been a violation of its stay order and requesting sanctions against the government. As per order of even date, United States Attorney Daniel López Romo and Assistant U.S. Attorney Ricardo Pesquera were ordered to appear before the undersigned on October 11, 1988 so that this court could determine what proceedings, if any, took place before the grand jury in violation of our October 5 order staying those proceedings. If proceedings did take place after the issuance of our order, then Mr. López Romo and Mr. Pesquera were ordered to show cause, if any there be, why they should not be held in contempt of court for violation of the court's order.

At the hearing held on October 11, 1988, arguments were heard and testimony was adduced as to the violation of the court's order and petitioner's motion requesting disqualification. At that time, Pesquera admitted that he had continued with the proceedings the day after our order, presenting four additional witnesses before the grand jury. However, he explained to the court that he had not intended to violate the court's order and his actions were undertaken as a result of a good faith misunderstanding of the court's order. Mr. López Romo argued that he could not be held liable for contempt since he had disqualified himself from all participation in the grand jury proceedings related to Francisco Pujol by letter dated October 3, 1988, naming Mr. Charles Fitzwilliams Acting U.S. Attorney in this case. After considering the arguments of both parties, together with the totality of the circumstances, we found that Mr. Pesquera's conduct was sufficient to warrant a finding of contempt for willfully disobeying an order of this court and a fine of $300 was imposed. Since there was no evidence of any participation by Mr. López Romo in the proceedings before the grand jury which took place after the issuance of our order, the order to show cause was set aside as to him.

Arguments were also heard on petitioner's motion for disqualification. Petitioner presented the testimony of Dr. Pedro Vallés, a sociologist and clinical psychologist, to the effect that in Puerto Rico there is great respect and loyalty for the authority figure and that since the U.S. Attorney's brother is involved in this case the entire U.S. Attorney's Office would have an emotional interest in the outcome of the proceedings. The government opposed petitioner's arguments and contended that the evidence presented was speculative and constituted a dilatory and defensive tactic by Pujol. The matter was taken under advisement and is now pending before us.

Essentially, petitioner contends that the U.S. Attorney, and through him the entire office, have a disqualifying emotional interest in the outcome of this matter since the moral and professional character of the brother of the U.S. Attorney is at stake. In support of this argument, petitioner alleges that since he filed a complaint against the U.S. Attorney's brother before the Supreme Court of Puerto Rico charging him with extortion and seeking his disbarment, the U.S. Attorney's Office must assure the return of an indictment against Pujol in order to save the reputation of Mr. Francisco López Romo and please the U.S. Attorney. Finally, petitioner argues that the prejudice of the U.S. Attorney and his loss of subjectivity as to the grand jury proceedings is manifested by his statements to the press. Copies of several newspaper articles have been attached to petitioner's motion.

The grand jury has traditionally occupied a prominent position as an instrument of justice and is enshrined in the Constitution. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983); *Pittsburg Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959); *Costello v. United States*, 350 U.S. 359, 361–362, 76 S.Ct. 406, 407–408, 100 L.Ed. 397 (1956). The Fifth Amendment to the Constitution provides that no person shall be federally

prosecuted for a felony without having been indicted by a grand jury. The grand jury is a preconstitutional institution given constitutional stature by the Fifth Amendment, but not relegated by the Constitution to a position within one of the three branches of government. *See United States v. Chanen,* 549 F.2d 1306, 1312 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). The grand jury is free, within constitutional and statutory limits, to operate "independently of either prosecuting attorney or judge." *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (footnote omitted).

 A grand jury performs dual functions: 1) the determination of whether there is probable cause to believe a crime has been committed, and 2) the protection of citizens against unfounded criminal prosecutions. *Branzburg v. Hayes,* 408 U.S. 665, 668–87, 92 S.Ct. 2646, 2650–2660, 33 L.Ed.2d 626 (1972). In order to properly perform these functions, the grand jury has been accorded broad powers to inquire into violations of criminal law. Although the prosecutor may guide the grand jury in the exercise of its functions, the grand jury alone determines the course of an investigation. *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974); *United States v. Di Bernardo,* 775 F.2d 1470 (11th Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 357 (1986).

Generally, the prosecutor brings matters to the attention of the grand jury and gathers the required evidence. Although the grand jury may itself decide to investigate a matter or to seek certain evidence, it still depends on the prosecutor's office to secure evidence and witnesses. *United States v. Sells Engineering, Inc., supra,* 463 U.S. at 430, 103 S.Ct. at 3141. The prosecutor conducts the examination of witnesses, presents evidence before the grand jury, and instructs the lay jury on the applicable law. Finally, it is the prosecutor who ordinarily prepares a proposed indictment, even though the grand jury must review the evidence before adopting it as its own. *See* 8 Moore's *Federal Practice,* § 6.02[2], at p. 6–49; *see also Gaither v. United States,* 413 F.2d 1061 (D.C.Cir. 1969).

The federal court also performs an important role in supporting the grand jury function. The federal court exercises its power to summon witnesses to testify before the grand jury and compels recalcitrant witnesses to appear before the grand jury. *United States v. Pabian,* 704 F.2d 1533, 1536 (11th Cir.1983); *United States v. Chanen, supra,* 549 F.2d at 1313. Federal courts have the power and duty to dismiss federal indictments obtained in violation of the Constitution or laws of the United States. *See Pabian, supra,* at 1336.

 Likewise, federal courts have a "supervisory power over the administration of grand juries aimed at preventing abuses of the grand jury's power or authority." *United States v. Serubo,* 604 F.2d 807, 816 (3rd Cir.1979); *see also United States v. Basurto,* 497 F.2d 781 (9th Cir.1974); *United States v. Estepa,* 471 F.2d 1132 (2d Cir.1972). The supervisory power functions to guarantee that federal prosecutors act with due regard for the integrity of the administration of justice. *Basurto, supra,* 497 F.2d at 783 (Hufstesler, J., concurring). Thus, a court under its supervisory power may prevent prosecutorial impairment of the grand jury's independent role and dismiss an indictment because of prosecutorial misconduct. *See, e.g., United States v. Hogan,* 712 F.2d 757 (2d Cir.1983).

 Yet the authority and obligation of the courts to supervise the grand jury process are limited. *In re Grand Jury Investigation of Hugle,* 754 F.2d 863 (9th Cir. 1985) (Kennedy, J.). The constitutionally-based independence of each of the three actors—court, prosecutor and grand jury, requires that the supervisory power be used sparingly and be narrowly construed. *See United States v. Armstrong,* 781 F.2d 700, 704 (9th Cir.1986). Frequent or undue judicial intervention in the proceedings of a grand jury would impede its authority and undermine its constitutional role. *Id.; see also In re Grand Jury Investigation of*

*Hugle, supra,* 754 F.2d at 864. Therefore, a court should exercise supervisory authority over a grand jury proceeding only when there is a clear basis in law and fact for so doing. *Chanen, supra,* 549 F.2d at 1313; *Pabian,* supra, 704 F.2d at 1536.

Our function must be defined in terms of constitutional separation of powers between the judiciary and the executive, each branch vested with its own purposes and powers in relation to the grand jury. *Pabian, supra,* 704 F.2d at 1536. Clearly, the "tradition and the dynamics of the constitutional scheme of separation of powers define a *limited* function for both court and prosecutor in their dealings with the grand jury." *Chanen, supra,* 549 F.2d at 1312. (Emphasis in original).

There are instances, however, where judicial intervention is required even before grand jury proceedings are completed. The usual instance of court intervention involves matters such as the consideration and supervision of orders compelling the witness to answer the questions propounded. *See, e.g., Brown v. United States,* 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959). Pre-indictment judicial intervention may also be necessary to assure that the constitutional rights of prosecution targets are adequately protected. Courts may also exercise their supervisory power over the grand jury where there is a clear potential for a violation of the rights either of a witness or of a prosecutor, if the violation cannot be corrected at a later stage. *In re Grand Jury Investigation of the Hugle, supra,* 754 F.2d at 864.

Nevertheless, until an indictment is returned and the district court presented with the case, the responsibility for the functioning of the grand jury is largely in the hands of the United States Attorney. *United States v. Eisenberg,* 711 F.2d 959, 965 (11th Cir.1983). This does not mean that the court cannot redress abuses by the United States Attorney. The district court can exercise its supervisory power after indictment to protect the fair administration of justice, as well as to protect a defendant's constitutional right to a fair trial. *Id.*

■ Prosecutors are vested with great discretion as to matters which are submitted to a grand jury. Accordingly, as an incident of the constitutional separation of powers, the courts should not interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions. *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.) (en banc) *cert. denied, sub nom. Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

■ A prosecutor in the presentation of a case to a grand jury has an obligation to uphold the fairness, impartiality and lack of bias of this important governmental body. Nevertheless, prosecutors need not be entirely "neutral and detached". *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 248, 100 S.Ct. 1610, 1616, 64 L.Ed.2d 182 (1980) (quoting *Ward v. Village of Monroeville,* 409 U.S. 57, 61, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972)). Due to our adversary system, prosecutors must necessarily be zealous in their enforcement of the law. *Marshall, supra,* 446 U.S. at 248, 100 S.Ct. at 1616. A prosecutor should prosecute with earnestness and vigor, but should not ignore his duty to refrain from utilizing improper methods calculated to produce a wrongful conviction. *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). The United States Attorney must always remember that "he is the representative, not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Id.* at 88, 55 S.Ct. at 633. But when an overzealous prosecutor fails to follow the beacon of that clear-cut doctrine and goes astray, the court is duty-bound to intervene and guarantee that injustice shall not prevail and that the innocent shall not suffer.

■ The target of the grand jury investigation, Francisco Pujol, alleges that the U.S. Attorney and the U.S. Attorney's entire Office have an emotional interest in the investigation. Pujol asks that the U.S. At-

torney and the U.S. Attorney's Office be disqualified from further participation in the case. Pujol points as grounds for disqualifying emotional bias to the participation of the brother of the U.S. Attorney as a government witness in the grand jury investigation; the complaint filed by Mr. Pujol against the brother of the U.S. Attorney before the Supreme Court of Puerto Rico; and prejudicial leaks to the press allegedly from the U.S. Attorney's Office.

Clearly, a prosecutor who has a conflict of interest cannot administer justice. U.S. Attorney Daniel López Romo recused himself from all participation in the grand jury investigation to avoid the appearance of impropriety. Letter dated October 3, 1988. Thus, the only issue remaining is whether the entire U.S. Attorney's Office should be disqualified from the investigation.

In the case of a law firm, if any member of the firm has an interest in the outcome of a case, the entire firm is disqualified.[1] Recognizing that indiscriminate application of DR 5–105(D) would defeat other policy objectives, the Ethics Committee of the ABA has tempered the Rule as it applies to government officers. The Committee has opined that if DR 5–105(D) were construed to apply to government agencies:

> The government's ability to function would be unreasonably impaired. Necessity dictates that government action not be hampered by such a construction of DR–5–105(D). The relationships among lawyers within a government agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice. The important difference in the adversary posture of the government lawyer is recognized by Canon 7: the duty of the public prosecutor to seek justice, not merely to convict, and the duty of all government lawyers to seek just results rather than the result desired by a client. The channeling of advocacy toward a just result as opposed

to vindication of a particular claim lessens the temptation to circumvent the disciplinary rules through the action of associates. Accordingly, we construe DR 5–105(D) to be inapplicable to other government lawyers associated with a particular government lawyer who is himself disqualified by reason of DR 4–101, DR 5–105, DR 9–101(B), or similar disciplinary rules.

ABA Committee on Professional Ethics, Formal Op. 342, 62 A.B.A.J. 57 (1976).

The Committee concluded that when the individual attorney is disqualified from participation in a particular case, the "vicarious disqualification of a government department is not necessary or wise." *Id.*

Other courts have followed the ABA approach, and have not applied vicarious disqualification to government agencies. *United States v. Caggiano,* 660 F.2d 184 (6th Cir.1981) (U.S. Attorney's Office), *cert. denied, sub nom., Winfield v. United States,* 454 U.S. 1149, 102 S.Ct. 1015, 71 L.Ed.2d 303 (1982); *United States v. Judge,* 625 F.Supp. 901 (D.Haw.1986) (Federal Defender's Office); *United States v. Hubbard,* 493 F.Supp. 206 (D.D.C.1979) (U.S. Attorney's Office), *aff'd sub nom. United States v. Heldt,* 668 F.2d 1238 (1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

In *Caggiano, supra,* the circuit court found that it was an error for a district court to disqualify an entire U.S. Attorney's Office because of an alleged appearance of impropriety or conflict of interest on the part of one of its members. In so doing, the court held that the conflict of interest, whether by actual impropriety or the appearance of impropriety, only disabled the person(s) causing that conflict and did not vicariously infect an entire government department. 660 F.2d at 191.

Since the U.S. Attorney Mr. López Romo has recused himself from any participation in the grand jury proceedings in question, we find that our intervention is not necessary or warranted. Plaintiff's allegations

---

**1.** Model Code of Professional Responsibility, DR 5–105(D), provides:

> If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment.

to the effect that the entire U.S. Attorney's Office has a disqualifying emotional stake in the investigation stretch the concept of intra-office loyalty to a breaking point.

It should be noted that the cases which have allowed judicial intervention at the preindictment, investigatory stage, have required that serious abuses first be shown. *See In re Grand Jury Investigation,* 696 F.2d 449, 451 (6th Cir.1982) and cases cited therein. No such showing has been made here. Clearly, petitioner's conclusory allegations are insufficient to warrant the court's intervention through the use of its supervisory powers. Use of these supervisory powers to disqualify government officials from proceeding before a grand jury based on conclusory allegations of conflict of interest and speculation as to possible improprieties runs afoul of the policies of promoting "a fair method of instituting criminal proceedings", *Costello, supra,* 350 U.S. at 362, 76 S.Ct. at 408, protecting "citizens against arbitrary and oppressive governmental action", *Calandra, supra,* 414 U.S. at 343, 94 S.Ct. at 617, or assuring the "protection of citizens against unfounded criminal prosecutions." *Branzburg, supra,* 408 U.S. at 686, 92 S.Ct. at 2659. Accordingly, whether a prosecutor who appears before a grand jury labors under a conflict of interest or whether his conduct oversteps the bounds of propriety should be determined after indictment, not by mere conjecture or speculation beforehand. To hold otherwise would burden the grand jury with minitrials and preliminary showings which would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. *United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973).

Wherefore, for the reasons stated above, petitioner's motion for disqualification is hereby DENIED. All grand jury proceedings related to Mr. Pujol shall continue their normal course.

SO ORDERED.