IN RE SPECIAL GRAND JURY INVESTIGATION
CONCERNING ORGANIC TECHNOLOGIES.

[Cite as *In re Special Grand Jury Investigation Concerning
Organic Technologies* (1999), 84 Ohio St.3d 304.]

(No. 97–1506—Submitted September 16, 1998—Decided January 13, 1999.)

*Bricker & Eckler, L.L.P., Michael S. Holman, Warren I. Grody* and *Kimberly J. Brown; McFadden, Winner & Savage* and *Mary Jane McFadden,* for appellant Wiley Organics, Inc., d.b.a. Organic Technologies.

*Betty D. Montgomery,* Attorney General, *William A. Klatt, Christopher Jones* and *Robert E. Ashton,* Assistant Attorneys General; *Robert L. Becker,* Licking County Prosecuting Attorney, and *Kenneth W. Oswalt,* Assistant Prosecuting Attorney, for appellee state of Ohio.

*Lora L. Manon,* Hardin County Prosecuting Attorney, urging affirmance for *amicus curiae,* Ohio Prosecuting Attorneys' Association.

MOYER, C.J. The issues before us are (1) whether the trial court improperly excluded Organic and its counsel from the hearing process, and (2) if excluding Organic from the hearing was proper, whether the trial court correctly determined that the state did not violate Crim.R. 6(E).

We hold that the trial court abused its discretion in barring Organic and its counsel from the evidentiary hearing and therefore remand the case for a new hearing consistent with this opinion.

Both courts below determined that the hearing procedures established in *United States v. Eisenberg* (C.A.11, 1983), 711 F.2d 959, are appropriate and were followed in the instant case. *Eisenberg* has been adopted by both state and federal courts as the model for establishing Crim.R. 6 hearing procedures. In *Eisenberg*, the two petitioners were targets of an ongoing grand jury investigation. During the investigation, the district court found that highly prejudicial information concerning matters before the grand jury had been given to the press. The targets of the investigation alleged that the information had come from government officials. The trial court then ordered the state to provide the targets with extensive information, including the substance of every communication it had with members of the media. The appeals court reversed this holding, noting that because the grand jury investigation was still under way, such a broad order was improper. The appeals court limited any requirement that the government furnish information to the targets to the extent necessary to stop publicity and punish offenders, and held that even this information should be provided to the court *in camera* so long as grand jury proceedings were still under way. The *Eisenberg* court prohibited persons who were the targets of a criminal investigation and their counsel from any preindictment participation in a Crim.R. 6 investigation, but did not prohibit participation once the grand jury proceedings have ended. See *Eisenberg*, 711 F.2d at 966 ("The court may subsequently determine * * * whether counsel for targets should be present at the hearing."). In reaching this conclusion, the *Eisenberg* court explicitly required a balancing of the target's interest in participation with the harmful effects that could follow from that participation. *Id.* at 965. We adopt the *Eisenberg* balancing test. When weighing reasons that support maintaining secrecy in grand jury proceedings, it is important to consider that while these reasons may all weigh against disclosing grand jury information to the public, they do not all weigh against allowing the target to participate in a Crim.R. 6 hearing. For example, the secrecy interests that protect the target from unnecessary exposure should be weighed in favor of target participation at a hearing rather than against it. No harm relative to this particular concern can occur by allowing the target's counsel to participate in the hearing.

Under the facts of *Eisenberg*, when the grand jury is still active and no decisions have yet been reached, use of this balancing test will nearly always result in the exclusion of the target because of the need to maintain secrecy and to protect against possible interference with the grand jury proceedings and witnesses. Thus, we agree with the holdings of the federal cases that have disallowed adversarial hearings when a grand jury investigation is still underway.

See, *e.g.*, *In re Sealed Case No. 98–3077* (C.A.D.C.1998), 151 F.3d 1059 (citing several federal cases and noting that *in camera* and/or *ex parte* hearings are the norm). However, the balance of interests is much different under the facts of this case, when not only has the grand jury investigation been closed, but the defendant has pled no contest to the charges and has begun serving his sentence.

"[T]he interests in grand jury secrecy are reduced, although not eliminated, when the grand jury has ended its investigation." *In re Grand Jury Proceedings Relative to Perl* (C.A.8, 1988), 838 F.2d 304, 307. The secrecy of grand jury proceedings continues even after the grand jury investigation is concluded in order to protect witnesses from retaliation, to prevent tampering with witnesses who may be called to testify at a resulting trial, and to prevent publication of unwarranted charges against an innocent target. Of these, only the first concern remains in full effect after the target has pled guilty or no contest to the underlying charges, thereby eliminating both the presumption of innocence and the need for witnesses at trial.

In this case, the only issue remaining as a valid secrecy concern weighing against allowing Organic to participate at the Crim.R. 6(E) hearing is the potential for retaliation against witnesses who testified during the grand jury investigation. This potential for harm is significantly lessened if witness identification is unnecessary to determine whether the state made the unauthorized disclosure alleged in the prima facie case. In this case there has been no showing that any previously undisclosed information regarding the identity of witnesses would be likely to arise at the hearing. Indeed, the sealed transcripts of the hearing do not identify any witnesses against the targets not already disclosed by the state as part of the sentencing memorandum. Further, there was no reason to anticipate that such disclosure would be necessary based on the allegations in the prima facie case. The questions at issue here were centered on two types of disclosures. The first was whether disclosed information connected to the sentencing memorandum had been authorized by the trial court order. The grand jury information relevant to this question has already been disclosed not only to the target but to the general public and the news media. There is no reason to believe that the resolution of this question would involve disclosure of any additional grand jury information.

The second major issue arises from the state's disclosure of alleged grand jury documents to other governmental entities and civil attorneys. This issue revolves around documents which were provided by the target to the state and which were in existence prior to the commencement of the grand jury proceedings. Where the materials to be disclosed are independently generated, as opposed to grand jury minutes or transcripts of testimony, there is a reduced need for secrecy. *Id.*, 838 F.2d at 308. Further, there is no need to keep documents secret from

the target and its counsel when these documents were provided to the state by the target itself with the understanding that they would be used in the grand jury investigation.

Absent any showing by the state that previously undisclosed information not already known to the target is likely to be elicited at the hearing, there is nothing weighing against allowing the target's counsel to participate in the hearing. Even if it is possible that previously undisclosed information may arise, this still must be weighed against the target's interest in participation and the state's interest in ensuring that there is a full and fair investigation into any alleged leaks of grand jury information. The federal courts have recognized that "[t]he advantage of cross-examining government agents * * * about whether a 'leak' of grand jury information has occurred cannot be overstated, particularly in cases of large-scale public interest." *In re Sealed Case No. 98–3077,* 151 F.3d at 1071. There is no question that the events leading up to this hearing were a matter of large-scale public interest in Ohio. We are not unmindful of the Attorney General's incentive to publicize the events from which the investigation derived. It is particularly important under such circumstances that a process be afforded to a party who has suffered harm resulting from a breach of grand jury secrecy. It is also important to protect against any appearance of impropriety surrounding disclosures that may have been authorized for legitimate purposes.

Balancing the need to prevent unauthorized disclosures of grand jury information and to sanction the source of such disclosures against the continued preservation of secrecy during subsequent investigations of alleged disclosures defies a bright-line test. Trial courts have wide discretion in weighing these competing interests and fashioning ways to allow target participation or to otherwise provide for a thorough investigation of the prima facie claim. However, the court can abuse this discretion when it prohibits target participation despite the absence of any factors weighing against such participation.

Under the facts of this case, the state did not establish a potential for harm that could have resulted from allowing Organic's counsel to participate in the Crim.R. 6 hearing. Any residual possibility that previously undisclosed information regarding witness identification might arise clearly did not outweigh the benefit to Organic and to the grand jury process. Once the hearing was under way, if either the trial court or the state believed that previously undisclosed information regarding the identity of grand jury witnesses was necessary to the investigation of the prima facie violation of Crim.R. 6, protective measures could have been implemented to preserve the secrecy of that information without totally banning Organic from participating in the hearing.

For these reasons, we hold that the trial court abused its discretion by holding an *ex parte* Crim.R. 6 hearing when the state did not establish any potential for

harm that could result from allowing Organic to participate. We therefore reverse the court of appeals and remand this cause to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY and COOK, JJ., concur in part and dissent in part.

---

COOK, J., **concurring in part and dissenting in part**. I agree with the majority's adoption of the *Eisenberg* balancing test, but I differ with the majority as to the scope of the remand.

I analyze differently than the majority the role that *Eisenberg* played in the decision of the trial court. The majority holds that the trial court abused its discretion in applying the *Eisenberg* balancing test. I believe instead that the trial court erred by deciding that the target had no valid interests to balance.

Though the trial court's opinion acknowledged the *Eisenberg* balancing test, it went on to conclude incorrectly that a target does not have standing to participate in a Crim.R. 6(E) evidentiary hearing. *Eisenberg* teaches that a target's interests in participation *are* to be balanced against the harmful effects that may result from that participation; standing is presumed.

Because the trial court assumed that lack of standing obviated the analysis and weighing of the target's interests, it never properly engaged in the balancing assigned to it under *Eisenberg*. I would, therefore, remand the cause to the trial court for that purpose, thus leaving to that tribunal the initial judgment as to whether such balancing favors the target's participation in the evidentiary hearing.

F.E. SWEENEY, J., concurs in the foregoing opinion.