**In re GRAND JURY SUBPOENAS, APRIL, 1978, AT BALTIMORE.**

**Nos. 78–1335, 78–1336.**

United States Court of Appeals, Fourth Circuit.

Argued July 21, 1978.

Decided Aug. 3, 1978.

As Amended Aug. 17, 1978.

James A. Bruton, Atty., Tax. Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C., Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., Gilbert E. Andrews, Robert E. Lindsay, Charles E. Brookhart, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before WINTER, Circuit Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.

WINTER, Circuit Judge:

A corporation, currently under investigation by a federal grand jury for possible federal income tax violations, appeals from an order of the district court denying its motion to quash eight grand jury subpoenas and to terminate the grand jury proceedings. Alternatively, the corporation seeks a writ of mandamus directing the district court to hold an evidentiary hearing into allegations that the grand jury process has been abused by the Internal Revenue Service (IRS) and the Justice Department.[1]

Because we are of the opinion that the district court's order is not a final decision within the meaning of 28 U.S.C. § 1291, we dismiss petitioner's appeal (No. 78–1336) for want of jurisdiction. As to the mandamus petition (No. 78–1335), we dismiss on the merits. We are not persuaded that petitioner has alleged a case of sufficient substance to warrant an evidentiary hearing or to entitle it to the writ.

## I.

After actively auditing petitioner's tax returns for more than seven years,[2] the Intelligence Division of the IRS, in May, 1977, initiated a criminal investigation of petitioner's tax returns for the years 1971–1975.[3] At some point prior to April, 1978,

Samuel Dash, Georgetown University Law Center, Washington, D. C. (Richard R. Molleur, Washington, D. C., and Lawrence M. Brauer, Marvin J. Garbis, Allen L. Schwait, Stephen C. Struntz, Garbis & Schwait, P. A., Baltimore, Md., on brief), for appellant.

1. The life of the grand jury to which these proceedings relate has not expired and it has not concluded its deliberations. In order to preserve the secrecy of its proceedings, we will hereafter refer to the corporation which is the subject of its inquiry as "petitioner."

2. The civil audit of taxable years 1967–1972 resulted in a deficiency notice, which petitioner is currently challenging in United States Tax Court. The civil audit of taxable years 1973–1975 is ongoing.

3. A prosecution for fraud, if any, for the taxable year 1971 will be barred by limitations unless instituted before an undisclosed date in September, 1978. See 26 U.S.C. § 6531.

the decision was made to discontinue the administrative investigation into petitioner's possible criminal liability and to rely instead on the investigatory powers of the federal grand jury.[4] The decision to resort to a grand jury was made at or about the time that petitioner was successful in resisting judicial enforcement of several administrative summonses, but the record does not establish whether before or after. The grand jury investigation is currently proceeding, with five IRS agents who were previously involved in the administrative investigation (including one that has also been involved in the civil audits) now assisting the government attorney responsible for the grand jury investigation.

On April 11, 1978, the clerk of the district court, upon application of the government, issued eight subpoenas to secure certain documents believed to be in the possession of petitioner. Shortly thereafter petitioner moved to have the subpoenas quashed and the grand jury proceedings terminated. Alternatively, petitioner sought a protective order prohibiting disclosure of grand jury materials to the IRS. Petitioner charged that the government was improperly using the broad powers of the grand jury to obtain documents and records, otherwise unobtainable through the administrative process, desired by the IRS for civil purposes and its administrative criminal investigation.

After hearing the parties' arguments *in camera* and receiving a sworn affidavit at-

testing to the government's good faith in conducting the grand jury investigation,[5] as well as assurances that the IRS agents participating in the investigation realized that disclosure without a court order was prohibited by F.R.Crim.P. 6(e)(2)(B),[6] the district court denied relief. Proceedings in this court followed.[7]

## II.

We consider first the basis on which the case is before us.

■ For an appeal properly to lie, the order of the district court must constitute a final decision under 28 U.S.C. § 1291, or come within the several exceptions as to interlocutory decisions enumerated in 28 U.S.C. § 1292. Petitioner concedes that the instant action is not made appealable by § 1292, but instead contends that the district court's order constitutes a final decision within the meaning of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We disagree.[8]

■ It is settled in this circuit that the appropriate way to challenge alleged "errors or abuses of discretion on the part of district judges in dealing with grand jury investigations" is through a petition for a writ of mandamus. *United States v. United States District Court*, 238 F.2d 713, 719 (4 Cir. 1956), *cert. denied, Valley Bell Dairy Co. v. United States*, 352 U.S. 981, 77 S.Ct.

---

4. The principal factual dispute between petitioner and the government concerns the government's motives for abandoning the administrative investigation in favor of a grand jury investigation. This dispute will be discussed in Part III of this opinion.

5. One of the Department of Justice Attorneys conducting the investigation affirmed, under oath, that "[t]he grand jury is engaged solely in the investigation of criminal matters and is not gathering evidence for the purpose of using such evidence in any ongoing or contemplated civil proceeding of any kind whatsoever."

6. *See* footnote 12 infra.

7. Following the district court's denial of relief and its refusal to stay compliance with the subpoenas pending review by us, petitioner

sought a stay from a single circuit judge of this court. The stay was denied; however, we agreed to hear the case on an expedited basis.

8. *Cohen* did not involve an appeal from a district court decision involving grand jury matters. On at least two occasions the Supreme Court has held that refusals to quash grand jury subpoenas are not appealable as final decisions under § 1291. *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 460 (1940). *See also In re Special March 1974 Grand Jury, Etc.*, 541 F.2d 166 (7 Cir. 1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977). The reasoning in these cases is dispositive of our lack of appellate jurisdiction.

382, 1 L.Ed.2d 365 (1957). *Accord, In re April 1977 Grand Jury Subpoenas,* 573 F.2d 936, 940–41 (6 Cir. 1978), *rehearing en banc granted* (June 8, 1978); *Application of Johnson,* 484 F.2d 791, 795 (7 Cir. 1973). The grand jury process, like the discovery process in civil litigation, on occasion gives rise to questions of exceptional importance despite the early stage at which they occur. Even though the decisions of district courts to intervene or to decline to intervene in these pre-trial processes are not routinely appealable, the power of mandamus is available where the question presented is of such exceptional importance or extraordinary nature that justice requires immediate review. *Cf. Schlangenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *United States Board of Parole v. Merhige,* 487 F.2d 25 (4 Cir. 1973), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974). Therefore, while we lack jurisdiction to entertain this appeal, we do not doubt our authority, under the All Writs Act, to direct the district court to take whatever action is necessary and proper to protect petitioner's legitimate interests in an appropriate case.

■ For us to exercise this power, however, the circumstances must be particularly compelling. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). Petitioner necessarily carries a heavy burden in convincing us to issue the writ. Not only must we be persuaded that petitioner has a clear and indisputable right which the district court by its action has abridged, but we must also be persuaded that unless we

act promptly to rectify the district court's error, petitioner's right will be irretrievably lost. *See Kerr v. United States District Court, supra,* at 403, 96 S.Ct. 2119; *Will v. United States,* 389 U.S. 90, 95–96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 382–85, 74 S.Ct. 145, 98 L.Ed. 106 (1953); *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). With these considerations in mind, we turn to the merits of petitioner's case.

### III.

Petitioner contends that the powers of the grand jury have been purposely abused by the government and that, because of the government's improper motives, petitioner should not be subjected to the grand jury's process and the grand jury's investigation should be terminated. Briefly stated, petitioner alleges that IRS has had a history of using grand jury powers to further administrative investigations that have otherwise become stymied.[9]

Coupled with its allegation of historical abuse, petitioner points out that, in the instant case, IRS was conducting a joint civil and criminal investigation during which petitioner was served with a number of administrative summons with which it refused to comply, and this refusal was subsequently vindicated in an enforcement action in the district court. Shortly after IRS lost its court battle to enforce the summons, the grand jury investigation began, with several agents previously involved in the administrative investigation being deputized for the grand jury probe. The subpoenas then served by the grand jury sought the same materials which the

---

**9.** Petitioner attempts to substantiate this allegation by citing an IRS practice commonly known as an "open-ended grand jury" proceeding. As the relevant section (now withdrawn) of the Internal Revenue Manual states, it was established IRS practice, until recently, to recommend a grand jury investigation when an administrative *criminal* investigation had become stymied. The expectation was that the grand jury could develop evidence, unobtainable by administrative procedures, which would allow IRS to make a better informed recommendation whether or not to prosecute. *See* § 9267.4, Internal Revenue Manual (withdrawn November, 1977). While we express no opinion as to the propriety of this practice, we do not think that it lends support to the allegation that IRS regularly engaged in the use of the grand jury process for *civil* law enforcement purposes. Petitioner's other attempts at buttressing its suspicions of official wrongdoing are equally unconvincing.

IRS had unsuccessfully attempted to obtain administratively. Petitioner's inference, which it wants the district court to investigate, is that the grand jury is being used as a subterfuge for gaining access to documents IRS needs in its pending civil and criminal investigation of petitioner.[10]

The district court refused to conduct the investigation into the government's motives and purposes which petitioner sought. Instead it relied on an affidavit by a Department of Justice attorney attesting to the government's good faith in utilizing the grand jury. We agree with the district court that no further inquiry is required at this juncture and that petitioner is subjected to no risk of substantial injury by allowing the grand jury to run its course.

■■■ A grand jury is convened to determine "if there is probable cause to believe that a crime has been committed . . ." *Branzburg v. Hayes*, 408 U.S. 665, 686, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972). If the powers of the grand jury, including the power to subpoena documents, are used, not for the purpose of criminal investigation but rather to gather evidence for civil enforcement, there exists an abuse of the grand jury process. *United States v. Proctor & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *Robert Haw-*

*thorne, Inc. v. Director of Internal Revenue,* 406 F.Supp. 1098, 1118 (E.D.Pa.1976). This is the abuse alleged by petitioner.[11] The precise question for decision is whether a district court is obliged to conduct a full evidentiary hearing at the time such abuse is alleged or whether it is sufficient, during the course of the grand jury's proceedings, to rely on the government's own affirmations of good faith.

■■■ We begin with the well-recognized principle that courts should not intervene in the grand jury process absent compelling reason. *United States v. Dionisio,* 410 U.S. 1, 16–18, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). Clearly, to hold an evidentiary hearing into prosecutorial motivation with an eye toward quashing otherwise lawfully issued subpoenas and even terminating the entire process would be substantial judicial intervention. Nonetheless, such intervention might well be required if it were the only means of protecting petitioner from the abuse he alleges. There is, however, a less drastic remedy in F.R.Crim.P. 6(e). The district court made clear that it considered Rule 6(e) to be adequate protection of petitioner's interests. We agree.

Rule 6(e), as recently amended,[12] provides generally that materials secured by the

---

**10.** The government denies any illicit motivation, explaining the decision to initiate a grand jury investigation by pointing to the imminence of the bar of limitation. *See* n.2, *supra.*

**11.** A secondary contention made by petitioner both in brief and at argument is that the grand jury process was abused because the government failed to adhere strictly to its internal procedures for initiating grand jury investigations in tax cases. We find this contention to be totally devoid of merit. Petitioner has no entitlement to have any particular internal policy followed with regard to the decision to institute a grand jury investigation. *Cf. Sullivan v. United States,* 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210 (1954). Petitioner's only legitimate concern is that it not be subjected to an investigation conducted for illicit purposes.

This secondary contention is also the basis for petitioner's claim that the present grand jury proceedings are in aid of IRS's pending administrative *criminal* investigation. Apparently its theory is that the present grand jury may not validly indict, even if it has a proper evidentiary base, because the government's internal administrative procedures for investigating criminal cases have not been fully satisfied. We disagree. Thus, we deem the alleged abuse of the grand jury process to be solely that of improper aid to pending *civil* litigation.

**12.** As amended by Pub.L. 95–78, 91 Stat. 319 (1976), effective October 1, 1977, Rule 6(e) provides as follows:

(e) Secrecy of Proceedings and Disclosure.—

(1) General rule.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the Government, or any person to whom disclosure is made under paragraph (2)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court.

(2) Exceptions.—

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand

grand jury in the course of its investigation shall not be disclosed except as authorized in subsection (2). As relevant here, subsection (2) allows disclosure to "an attorney for the government for use in the performance of [his] duty" and to "such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law." In the instant case, the government attorney in charge of the grand jury investigation deemed it necessary to secure the assistance of several special agents with some knowledge of petitioner's business and tax affairs.[13] Subsection (2) also imposes certain obligations with respect to disclosure to these necessary government personnel. Their names and a description of the materials disclosed must be provided to the district court. Each is under a duty not to "utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce Federal criminal law." Each of the special agents involved in the instant case has been advised of his duty not to disclose grand jury material and that a breach of this duty is punishable by contempt.[14]

This is not to say that the Audit Division, which is charged with civil enforcement of federal tax law, has no legitimate interest in the materials secured by the grand jury. "The Government does not sacrifice its interest in unpaid taxes just because a criminal prosecution begins." *United States v. LaSalle National Bank*, —— U.S. ——, ——, 98 S.Ct. 2357, 2365, 57 L.Ed.2d 221

---

jury, other than its deliberations and the vote of any grand jury, may be made to—
(i) an attorney for the government for use in the performance of such attorney's duty; and
(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law.
(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce Federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.
(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or
(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.
(3) . . .

**13.** In its brief, petitioner also challenges the participation of some or all of these IRS agents in the grand jury investigation, arguing that such participation violates Canon 9 of the American Bar Association Code of Professional Responsibility and Section 1.2(a) of the Associ-

ation Standards Relating to the Prosecution Function. In making this argument, petitioner relies heavily on a recent panel decision in the Sixth Circuit, *In re April 1977 Grand Jury Subpoenas*, 573 F.2d 936 (6 Cir. 1978), *rehearing en banc granted* (June 8, 1978), in which the panel vacated the appointment of an IRS lawyer to assist in a grand jury investigation on the ground that the appointment gave the appearance of impropriety. 573 F.2d at 947–48. While we find the dissenting views of Judge Merritt on this point somewhat more persuasive than those of the majority, we need not reach this issue at this time because of petitioner's failure to make his challenge first before the district court.

**14.** At oral argument, we were advised that the special agents assigned to the instant investigation have been filing reports of the proceedings with their superior, the Chief of the Service's Intelligence Division. We assume that the district court has also been advised of this fact. So long as the district court is aware of this disclosure, we do not view it as a breach of Rule 6(e)(2)(B). It is the obligation of the Chief of the Intelligence Division to supervise the special agents assigned to that Division. That these agents have been assigned temporarily to assist in a grand jury investigation makes them no less responsible to their supervisor. Effective supervision is impossible if the supervisor is unaware of his agent's activities. Thus, we think the disclosure necessary to assist the Chief in the performance of his duties. As one to whom disclosure may be made, he, too, is under the non-disclosure obligation of Rule 6(e)(2)(B) and the possible penalty for contempt.

(1978). Congress recognized this in amending Rule 6(e) and, accordingly, authorized judicially supervised disclosure of grand jury materials to government agency personnel for civil law enforcement purposes. *See* S.Rep.No.95–354, 95th Cong., 1st Sess., *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 527, 531–32.

Very recently one of the district courts in this circuit had occasion to supervise such a disclosure and in so doing developed certain criteria which the government must meet in order to secure a disclosure order under Rule 6(e)(2)(C)(i), where the purpose of such disclosure is to aid civil tax enforcement. *First*, the government must provide a general description of the materials sought in order to allow the court intelligently to determine if such materials are rationally related to an existing or contemplated civil proceeding. *Second*, and of particular importance to the instant case, the government must satisfy the court that "the grand jury proceeding has not been used as a subterfuge for obtaining records for a civil investigation or proceeding." *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. 743, 751 (D.Md.1978).

 We fully agree that the government should be required to demonstrate its *bona fides* prior to obtaining a Rule 6(e)(2)(C) order. This showing is particularly important where the grand jury fails to return an indictment. In such case, the likelihood of improper use of the grand jury process is substantially greater, *see, e. g., United States v. Pennsalt Chemicals Corp.*, 260 F.Supp. 171 (E.D.Pa.1966), and an evidentiary hearing of the type now sought by petitioner might be necessary before disclosure is ordered.[15]

 In sum, we are of the opinion that petitioner's legitimate interests are fully

protected by Rule 6(e). Disclosure to the IRS for civil enforcement purposes requires a court order predicated on a demonstration of good faith. Unauthorized disclosure is deterred by the threat of contempt.[16]

We emphasize that the extent of petitioner's legitimate interest is that the grand jury process not be used for the primary purpose of obtaining materials relevant only to civil liability. We do not think that petitioner has alleged a case entitling it to the issuance of a writ of mandamus; and, because of the safeguards contained in Rule 6(e) and the government's representations as to motivation, we conclude that an evidentiary hearing at this juncture is neither warranted nor required in order to protect this interest. A hearing of the sort sought by petitioner at this stage in the proceedings would result in both an unwarranted breach of grand jury secrecy and an unnecessary delay in its proceedings. Particularly with a limitations period soon to run, we agree with the district court that the proper course is to let the grand jury process continue unimpeded. If there does exist evidence of criminal liability, it is in society's interest that this be made available to the grand jury before limitations have run. Any abuse of the grand jury process can be dealt with effectively at another time and in another manner.

*No. 78–1335—PETITION DISMISSED; No. 78–1336—APPEAL DISMISSED.*

---

**15.** The district court in *In re December 1974 Term Grand Jury Investigation, supra,* concluded that Congress intended that the government's application for a disclosure order be *ex parte* in the interests of grand jury secrecy. However, it is our view that the district court proceeding *ex parte* is not precluded from holding as extensive a hearing as is required to satisfy it that the government's use of the grand jury process has been proper.

**16.** While we do not decide the issue, it may well be argued in an appropriate case that fairness would require exclusion of any evidence in a civil proceeding which had been improperly obtained from the grand jury. *See* S.Rep.No.95–354, *supra*, at n. 12.