**Marion S. BARRY, Jr., Mayor of the District of Columbia, Appellant**

**v.**

**UNITED STATES of America, et al.**

**No. 87–5268.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1988.

Decided Jan. 27, 1989.

Herbert O. Reid, Sr., for appellant.

Bradley L. Kelly, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellees. Joseph E. diGenova, U.S. Atty.,* Royce C. Lamberth,* Michael J. Ryan and Stuart H. Newberger, Asst. U.S. Attys., also entered appearances for appellees.

Before EDWARDS, BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

Dissenting opinion filed by Circuit Judge SENTELLE.

HARRY T. EDWARDS, Circuit Judge:

This is an appeal from a judgment of the District Court dismissing a suit by the Mayor of the District of Columbia, Marion S. Barry, Jr., ("appellant" or "Mayor Barry") against the Attorney General of the United States, the United States Attorney for the District of Columbia, and other federal officials ("appellees"). In his suit, Mayor Barry claims that the appellees violated Federal Rule of Criminal Procedure 6(e)(2) ("Rule 6(e)(2)")[1] in disclosing matters occurring before the grand jury; he seeks both equitable relief and contempt sanctions for the alleged violations. In dismissing the suit, the District Court ruled that the appellant "failed to carry his burden to establish a *prima facie* case of prosecutorial misconduct based on violations of Rule 6(e)." Mayor Barry appeals from this judgment.

---

* At time of appearance.

1. Rule 6(e)(2) provides the "general rule of secrecy" for grand jury proceedings:

A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (e)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

We agree with the District Court that the cause of action stated in appellant's Complaint is civil, not criminal, and that it arises solely under Rule 6(e)(2). However, we reject the trial court's conclusion that the appellant failed to establish a *prima facie* case under Rule 6(e)(2). Accordingly, we remand the case to the District Court for an appropriate show cause hearing.

## I. BACKGROUND

### A. *Legal Proceedings*

On June 19, 1987, Marion S. Barry, Jr., Mayor of the District of Columbia, brought this action for equitable relief and contempt sanctions against the Attorney General of the United States, the United States Attorney for the District of Columbia, and other federal officials, alleging that they unlawfully disclosed matters occurring before the federal grand jury that was investigating allegations of corruption in the District of Columbia Government. In his Complaint, Mayor Barry charged the appellees with prosecutorial vindictiveness and misconduct in leaking grand jury information to the press; he also claimed that appellees' actions were intended to cause him irreparable harm, and that appellees had illegally interfered with his occupation and performance of duties as Mayor.

In support of his claim that the appellees had unlawfully disclosed grand jury secrets, Mayor Barry submitted newspaper and television reports allegedly pertaining to the grand jury investigation, letters from the appellant's counsel to the Attorney General complaining of official leaks, a press release issued by the United States Attorney, and appellant's own affidavit alleging that leaks to the press were impairing his ability to perform his official duties. As relief for the alleged violations, Mayor Barry sought an order from the trial court directing the appellees to show cause at an evidentiary hearing whether contempt sanctions should be imposed, pre-

venting further disclosures in violation of Rule 6(e)(2), requiring the United States Attorney to submit affidavits in good faith to support any further applications for grand jury subpoenas, and directing the United States Attorney to disclose to the public all information acquired to date pursuant to the grand jury process.[2]

The appellees moved to dismiss the Complaint and, in the alternative, for summary judgment. The appellees contended that the appellant was not entitled to any relief that might interfere with the ongoing proceedings of a grand jury. Furthermore, while acknowledging that a cause of action could be maintained under Rule 6(e)(2), appellees argued that Mayor Barry had failed to establish a *prima facie* case in support of such an action.

The District Court found that, "while [Mayor Barry] ha[d] framed his request as a civil complaint, it is in fact a motion seeking civil sanctions for alleged violations of [Rule] 6(e)." *Marion S. Barry v. United States of America,* No. 87–1692, slip op. at 2 (D.D.C. July 24, 1987), *reprinted in* Appendix for Appellant ("A.") 18. The court reached this conclusion based on "[t]he substance of the Complaint, the relief sought and the absence of any other claimed jurisdictional basis." *Id.* Relying on Rule 6(e), the court then reviewed the allegations of the Complaint in light of the news excerpts and documents filed by Mayor Barry, and held that Mayor Barry "ha[d] failed to carry his burden to establish a *prima facie* case of prosecutorial misconduct based on violations of Rule 6(e)." Slip op. at 14, A. 31. The District Court dismissed the Complaint.

The instant appeal followed. Mayor Barry moved for summary reversal of the District Court's decision. The appellees moved for summary affirmance. On March 10, 1988, this court denied both parties' motions and ordered full briefing of the issues raised in this case.

---

**2.** Mayor Barry also alleged that the appellees had violated Department of Justice regulations. The District Court found, however, that appellees had not contravened Justice Department guidelines, nor had they violated Local Rule 308(b)(2) of the District Court, relating to the conduct of government attorneys in criminal cases, nor had they violated Federal Rule of Criminal Procedure 41(g). The appellant has not raised these allegations on appeal.

## B. *The Facts*

Mayor Barry offers a series of news articles, dating from 1984 through 1987, which he suggests demonstrate a pattern of Government leaks of grand jury matters to the press. The District Court found that one of these articles, Werner, *Mayor of Washington is Subject of Perjury Inquiry by Grand Jury*, N.Y. Times, Aug. 29, 1984, at A1, col. 3, did indeed indicate that "law-enforcement officials familiar with [Mayor Barry's] testimony" disclosed details about the Mayor's statements to the grand jury about his alleged cocaine use. *See* slip op. at 8–9, A. 24–25. The article describes that a federal grand jury was looking into drug use among city employees and had questioned Mayor Barry about his possible involvement in the situation. The article states that federal law enforcement officials indicated that the Mayor had denied being a cocaine user and having obtained cocaine from a former city employee, Karen K. Johnson. In addition, the article also says that the officials indicated the direction in which the grand jury investigation was heading. *See* N.Y. Times, A16, col. 4.

Mayor Barry also offers an August 10, 1984, *Washington Post* article as evidence of improper Government leaks to the press. *See* Pichirallo & Kamen, *Ex–City Worker is Jailed After Refusing to Testify*, Washington Post, Aug. 10, 1984, at A1, col. 4. The article describes how Karen K. Johnson, a D.C. Government employee convicted of selling cocaine, refused to testify to a grand jury that was investigating D.C. Government corruption. A "knowledgeable law enforcement official" is cited in the article as saying "that it is highly unusual for a defendant in Johnson's position to refuse to answer questions." *Id.* at A11, col. 2. The article further reports that Mayor Barry had testified before the grand jury and had denied receiving cocaine from Johnson. *See id.* at A11, col. 3; *see also* Davis & Sellers, *Karen Johnson Jailed for Contempt, Loses Job*, Washington Times, Aug. 10, 1984, at A1, col. 2 (indicating that Government officials would continue a narcotics investigation despite Johnson's refusal to testify to grand jury).

Some of the other articles offered by Mayor Barry either do not explicitly mention "law enforcement officials" in connection with information disclosed about the grand jury proceedings, or they mention law enforcement officials only in connection with "investigations" underway that were not explicitly linked to the grand jury proceedings. In a May 23, 1987, *Washington Post* article, for example, a person is identified as having testified in grand jury proceedings regarding Government contracting practices, but the article refers to no federal sources as having provided that information. The U.S. Attorney is quoted as indicating that a long-running secret probe of federal and local contracts was continuing, triggered by allegations by local business people that "an attempt had been made to extort from them payoffs to middlemen, and possibly to government officials" in exchange for "two multimillion-dollar contracts the [business people were] attempting to acquire lawfully." Lewis, *FBI Probes D.C. Contracting*, Washington Post, May 23, 1987, at A1, col. 4 (quoting then-U.S. Attorney Joseph E. diGenova). However, information attributed to the U.S. Attorney is not tied to any of the matters occurring before the grand jury.

Similarly, a May 27, 1987, *Washington Post* article describes how federal prosecutors were investigating allegations of payoffs to Johnson for not testifying in grand jury proceedings regarding D.C. Government corruption. The investigation, however, is not characterized as revealing matters occurring before the grand jury. *See* Lewis, *Drug Seller, Contractor Ties Alleged*, Washington Post, May 27, 1987, at A1, col. 4. Moreover, in other articles that seem to disclose matters occurring before grand juries investigating Government corruption, only "sources," not "Government sources" are listed as providing such information. *See, e.g.*, LaFraniere, *FBI 'Consulting Firm' Formed for D.C. 'Sting'*, Washington Post, May 24, 1987, at A1, col. 4.

In short, the record contains a broad mix of news reports, some of which indicate that law enforcement officials may have

disclosed matters occurring before the grand jury, some of which suggest the same but are unclear, and some of which discuss claims of alleged Government corruption unrelated to grand jury proceedings. The District Court found that at least one of these articles indicated a possible violation of Rule 6(e)(2).

## II. DISCUSSION

### A. *The Cause of Action Under Rule 6(e)*

#### 1. *The Elements of a Cause of Action Under Rule 6(e)(2)*

■ The District Court found, and we agree, that the cause of action stated in appellant's complaint is civil, not criminal,[3] and that it arises *solely* under Rule 6(e)(2). The Rule provides, in pertinent part, that

> an attorney for the government, or any person to whom disclosure is made under paragraph (e)(A)(ii) ... shall not disclose matters occurring before the grand jury.... A knowing violation of Rule 6 may be punished as a contempt of court.

Every circuit that has considered the matter has recognized that a civil cause of action, either for equitable relief or civil contempt, is cognizable under Rule 6(e)(2). *See In re Grand Jury Investigation v. United States Dep't of Justice*, 610 F.2d 202 (5th Cir.1980) (hereinafter *"Lance"*); *Blalock v. United States*, 844 F.2d 1546, *reh'g denied* (*en banc*), 856 F.2d 200 (11th Cir.1988); *United States v. Eisenberg*, 711 F.2d 959 (11th Cir.1983); *In re Special April 1977 Grand Jury v. United States*, 587 F.2d 889 (7th Cir.1978) (hereinafter *"Scott"*); *In re Antitrust Grand Jury v. United States*, 805 F.2d 155 (6th Cir.1986); *Hunter v. Civella*, 673 F.2d 211 (8th Cir. 1982); *In re Grand Jury Subpoenas, April 1978*, 581 F.2d 1103 (4th Cir.1978).

■ It is generally understood that a *prima facie* case of a violation of Rule 6(e)(2) is made when "the media reports disclosed information about 'matters occurring before the grand jury' and indicated that the sources of the information included attorneys and agents of the Government." *Eisenberg*, 711 F.2d at 963; *see also Lance*, 610 F.2d at 216–20.[4] Once a *prima facie* case is shown, the district court must conduct a "show cause" hearing to determine whether the Government was responsible for the pre-indictment publicity and whether any information disclosed by the Government concerned matters occurring before the grand jury. At this hearing, the burden shifts to the Government to come forward with evidence to negate the *prima facie* case. If after such a hearing the trial court determines that remedial action is warranted, it may order the Government to take steps to stop any publicity emanating from its employees.

#### 2. *Appropriate Relief for Violations of Rule 6(e)(2)*

■ Appropriate relief under Rule 6(e) may include contempt sanctions and equitable relief, *i.e.*, either or both, depending upon the nature of the violation. The Rule generally prohibits an attorney for the Government from disclosing matters before the grand jury; but the Rule indicates no limits on the relief available to address violations. The only direct reference to relief is found in the last sentence of the Rule, which states that "[a] knowing violation of Rule 6 *may* be punished as a contempt of court." FED.R.CRIM.P. 6(e)(2) (emphasis added). Courts have recognized, however, that the literal terms of Rule 6(e)(2) do not foreclose equitable relief, either in addition to, in conjunction with or in

---

3. *See* discussion in part II.B.1, *infra*, concerning the nature of the appellant's action as *civil*, not criminal.

4. For discussions of what counts as "matters occurring before the grand jury," see, for example, *Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 582 (D.C.Cir.1987) (secrecy violated when information tends to reveal some secret aspect of the grand jury's investigation such as the identities of witnesses or jurors, the substance of testimony, the direction of the investigation or the questions of jurors, and the like); *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 870 (D.C.Cir.1981); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382–83 (D.C.Cir.) (*en banc*), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

lieu of contempt sanctions, where the trial court finds that such relief is warranted.[5]

In *Blalock,* the Eleventh Circuit reasoned that "there is no such thing as an independent cause of action for civil contempt; civil contempt is a device used to coerce compliance with an *in personam* order of the court which has been entered in a pending case." *Blalock,* 844 F.2d at 1550 (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949), and *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). Relying on the decision in *Lance,* the court in *Blalock* held that a target of the grand jury "may bring suit for injunctive relief against the individuals subject to Rule 6(e)(2) and may invoke the district court's contempt power to coerce compliance with any injunctive order the court grants." *Blalock,* 844 F.2d at 1551. We concur in this construction of Rule 6(e)(2).

Other circuits, as well, have indicated that injunctive relief is available under Rule 6(e)(2) in certain circumstances. *See Hunter v. Civella,* 673 F.2d 211 (8th Cir. 1982) (the court may disassemble the grand jury if there is strong evidence to support that the Government breached Rule 6(e)); *In re Antitrust Grand Jury v. United States,* 805 F.2d 155 (6th Cir.1986) (the court may order the Government to refrain from commenting on grand jury proceedings after the target has made a *prima facie* showing of a Rule 6(e) violation). The Fourth Circuit has found that contempt sanctions were sufficient in the particular cases confronting them, without addressing the availability of equitable relief under Rule 6(e). *See, e.g., In re Grand*

*Jury Subpoenas,* 581 F.2d 1103, 1110 n. 16 (4th Cir.1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

In addressing Rule 6(e)(2) violations, a court must distinguish between relief that seeks to modify offending conduct by Government officials and relief that directly interferes with grand jury proceedings. In *Bank of Nova Scotia v. United States,* —— U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), the Court held that, "as a general matter, a District Court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Id.* 108 S.Ct. at 2373. The circuit courts have gone even further in considering the appropriateness of relief under Rule 6(e)(2). As noted by the court in *Blalock,* a court must consider whether the relief requested will interfere with the grand jury proceeding. *Blalock,* 844 F.2d at 1551. This point is amplified in *Lance:*

> A criminal defendant who seeks to obtain dismissal of an indictment, a person subpoenaed to testify before the grand jury who requests the court to quash the subpoena, or the target of an ongoing grand jury investigation who seeks to have the grand jury dismissed bears a heavy burden in attempting to justify such relief. A prima facie case to secure a hearing on whether to impose contempt sanctions upon government attorneys, however, does not require as strong a showing. Such a hearing carries little threat of conflict with the grand jury proceedings.

610 F.2d at 219 (footnote omitted).

Thus, in considering the appellant's request for relief under Rule 6(e)(2), we work within a confined legal framework. First, if the target is successful in estab-

---

5. It is clear that the courts have strived to give real meaning to Rule 6(e)(2) because "[w]e consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979) (citation omitted). By preserving grand jury secrecy, "we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Id.* at 219, 99 S.Ct. at 1673 (footnote omitted). In addition, as the Supreme Court has indicated,

if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as inducements. There also would be a risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment.

*Id.*

lishing a *prima facie* case, the Government should be allowed to respond pursuant to a show cause hearing. Second, if the Government fails in its defense, the trial court must consider the appropriateness of equitable relief and civil contempt, *i.e.*, either or both, depending upon the nature of the violation and what the trial court deems necessary to prevent further unlawful disclosures of matters before the grand jury. Third, any relief given should be carefully tailored to avoid unnecessary interference with grand jury proceedings. In other words, a trial court may enjoin Government counsel from further disclosures and hold counsel in contempt for breaches of the Rule; however, except possibly in an extraordinary case of misconduct, the trial court must avoid disassembling or otherwise directly interfering with the work of the grand jury.

### 3. *The Proper Characterization of Appellant's Complaint*

■ The appellant appears to recognize the foregoing limits to a cause of action under Rule 6(e)(2). However, possibly in light of these strictures, the appellant argues that the District Court erred in characterizing his Complaint as limited solely to a claim under Rule 6(e)(2). On this point, the appellant contends that the Complaint properly seeks equitable relief beyond that available under Rule 6(e)(2), and also relief for a violation of the Mayor's alleged constitutional right to hold office and to engage in political activity. We reject these claims.

We agree with the District Court that Mayor Barry's claims reduce to a single protest about alleged disclosures of grand jury information in violation of Rule 6(e)(2). The appellant's various claims of tortious interference with employment, prosecutorial misconduct and vindictiveness, and irreparable damage all arise out of the alleged violations of Rule 6(e)(2), and are adequately redressed by the Rule. Furthermore, we can find no legitimate basis for his claim of constitutional violation, and the appellant has offered no legitimate support for such a claim either in his brief or at oral argument.

Mayor Barry charges that the appellees' alleged practice of leaking constituted prosecutorial vindictiveness. "By periodically releasing 'sensational' information," Mayor Barry argues, the "[a]ppellees have been vindictive in their use of prosecutorial powers." Brief for Appellant at 24. Yet, in the context of this case, the assertion of vindictiveness is nothing more than another way of framing a violation of Rule 6(e)(2). The doctrine of prosecutorial vindictiveness is narrowly focused on prosecutorial charging decisions, and cases founded on this doctrine generally involve allegations that a prosecutor increased charges after a defendant exercised some statutory or constitutional right. *See, e.g., United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). Mayor Barry's claims are not based, however, on a claim that the Government has been pursuing excessive charges against him.

Likewise, the appellant's claim that the alleged leaks constitute a form of prosecutorial misconduct—in violation of the common law—raises no separate cause of action apart from the claim under Rule 6(e)(2). Indeed, Mayor Barry admits that Rule 6(e)(2) "codifies the long established principal [sic] that grand jury proceedings are to be cloaked in secrecy." Brief for Appellant at 26. Appellant makes no claim that the protections or relief afforded by the applicable common law rule are materially different from those afforded pursuant to Rule 6(e)(2). Thus, Mayor Barry's so-called common law charge, in reality, reduces to a Rule 6(e)(2) complaint.

Thus, we uphold the District Court's findings that the cause of action stated in appellant's Complaint arises solely under Rule 6(e)(2).

### B. *The Nature of This Action and Its Appealability*

#### 1. *The Nature of the Action*

■ To the extent that the appellant's Complaint seeks relief in the form of contempt, there is a question whether the action is civil or criminal in nature. Because Rule 6(e)(2) is not expressly limited to ei-

ther civil or criminal contempt, we must look to the purpose of the proceeding in order to determine its nature. *Lance*, 610 F.2d at 212.

It is well established that civil contempt sanctions are "remedial, and for the benefit of the complainant," while criminal contempt sanctions are "punitive, to vindicate the authority of the court." *Gompers*, 221 U.S. at 441, 31 S.Ct. at 498; *accord NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1185 n. 73 (D.C.Cir.1981). In this case, Mayor Barry is clearly asking for prospective relief; he seeks, in particular, to put an end to Government leaking of grand jury secrets. Neither side doubts that the appellant's suit is civil in nature:

> To begin with, it is clear in this case that appellant sought civil, not criminal, contempt sanctions. Indeed appellant acknowledges in his brief that this is so. *See* Appellant's Br. at 43–44. The civil nature of the sanctions sought is clear from the remedial purpose desired to be furthered by them.... Appellant here was not asking that appellees be punished for alleged misdeeds so much as he was seeking to ensure that alleged grand jury leaks would stop.

Brief for Appellees at 31–32 (citation omitted). We agree with the finding of the District Court, and the apparent stipulation of the parties, that Mayor Barry's action is entirely civil in nature.[6]

### 2. The Appealability of the District Court's Judgment

■ One final threshold question remains to be addressed before we proceed to the merits of this case. That question concerns the appealability of the District Court's judgment denying appellant's claims for equitable relief and civil contempt. We hold that the appeal in this case is proper both as a "final order" under 28 U.S.C. § 1291 (1982) (in connection with the denial of civil contempt sanctions), and as an interlocutory order under 28 U.S.C. § 1292(a)(1) (1982) (in connection with the denial of injunctive relief).

Insofar as Mayor Barry seeks injunctive relief that has been denied by the District Court, this appeal is cognizable under 28 U.S.C. § 1292(a)(1). *See, e.g., Blalock*, 844 F.2d at 1548 n. 2. This point seems indisputable once it has been determined that the appellant's claim for equitable relief is cognizable under Rule 6(e)(2).

Furthermore, all of the circuits considering the question have held that a denial of request for civil contempt under Rule 6(e)(2) is appealable as a final order under 28 U.S.C. § 1291. Indeed, in finding an appealable "final order," these courts do not appear to distinguish between denials of civil contempt and denials of equitable relief.[7] For example, in *Lance*, the appellant had complained that "the extensive publicity surrounding the grand jury's investigation had exposed him to ridicule, humiliation, and embarrassment." *Lance*, 610 F.2d at 207. The court granted review of the district court's denial of a Rule 6(e)(2) sanction as an "appealable final order" under section 1291. The court explained that

> [t]he harm Lance alleges is capable of repetition, and if we were to require com-

---

**6.** *See also Blalock*, 844 F.2d at 1550–51 (target may seek civil contempt sanctions for violation of Rule 6(e)(2)). We recognize that the concurring judges in *Blalock* asserted that Rule 6(e) will support only a claim for criminal contempt, *see id.* at 1553 (Tjoflat & Roettger, JJ., concurring), but we do not agree with this limited reading of the Rule. For one thing, the Rule itself says absolutely nothing to suggest that it is limited to criminal contempt. For another thing, *none* of the circuits considering this question has ruled that Rule 6(e)(2) is restricted to a cause of action for criminal contempt. Finally, it would make little sense to construe Rule 6(e)(2) as reaching only criminal contempt, because the courts already possess an inherent authority to punish criminal contempt without additional rules or other legislative enactments. *See, e.g., United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 695–96, 91 L.Ed. 884 (1947) (the court has authority to issue a criminal contempt sanction even if it is determined later that the court lacked jurisdiction in the case); *see also id.* at 303–04, 67 S.Ct. at 701 (purpose of civil contempt sanctions is to coerce defendant into compliance with the court's order on behalf of complainant, and to compensate complainant for losses sustained).

**7.** This makes sense because a civil contempt sanction may *include* appropriate equitable relief.

pletion of the discrete criminal trial processes before permitting review, we would deny any efficacious remedy. Acquittal or conviction would so obscure the claim of a personal remedy for grand jury irregularity as to render it meaningless.

*Id.* at 212–13; *accord Eisenberg,* 711 F.2d at 966.

The Seventh Circuit ruled similarly in *Scott,* finding that a dismissal of a Rule 6(e) claim is an appealable order. The court reasoned that "if the grand jury returns no indictment against Scott, or if Scott is not eventually convicted, he would be afforded no opportunity to remedy the harm alleged because there would be nothing to appeal." 587 F.2d at 892.[8] Accordingly, the court found that the district court's ruling was appealable under section 1291.

Since Mayor Barry has sought civil contempt sanctions and injunctive relief from alleged continuing violations, we hold that the dismissal of his Rule 6(e)(2) claim is appealable under either section 1291 or section 1292.

### C. *The District Court's Judgment in This Case*

■ Applying the foregoing principles to the facts of this case, we hold that the appellant has offered sufficient evidence to establish a *prima facie* case of a violation of Rule 6(e), and that he is therefore entitled to a show cause hearing at which the Government must attempt to explain its actions.

We agree with the District Court that the August 29, 1984, *New York Times* article, which discloses information provided by "law-enforcement officials familiar with [Mayor Barry's] testimony" concerning matters occurring before a grand jury, N.Y. Times, Aug. 29, 1984, at A1, col. 3, constituted a *prima facie* violation of Rule 6(e)(2). *See* slip op. at 8–9, A. 24–25. The

article both "disclose[s] information about 'matters occurring before the grand jury' and indicate[s] that the sources of the information included attorneys and agents of the Government." *Eisenberg,* 711 F.2d at 963. Accordingly, we order the District Court to look further into this violation of Rule 6(e)(2) in order to determine whether there has been a pattern or practice of impermissible disclosures of grand jury materials which, if proven, would justify civil contempt sanctions and/or injunctive relief under Rule 6(e)(2).[9]

Other articles in the record also raise questions regarding possible improper Government disclosures of grand jury information. Among them is the August 10, 1984, *Washington Post* article, described above, which mentions certain grand jury testimony relating to an investigation of alleged D.C. Government corruption, and also cites the comments of an allegedly "knowledgeable law enforcement official" about that testimony. Washington Post, Aug. 10, 1984, at A11, col. 2; *see also* Washington Times, Aug. 10, 1984, at A1, col. 2 (indicating that Government officials would continue a narcotics investigation despite Johnson's refusal to testify to the grand jury).

On the record before us the appellant clearly is entitled to "a hearing on whether to impose contempt sanctions upon government attorneys." *Lance,* 610 F.2d at 219. The Government argues that appellant's case should fail for lack of specificity under Rule 6(e)(2); but the Rule "does not require as strong a showing" as the appellees suggest. *Id.* As the court in *Lance* noted:

It is not necessary for [an] article to expressly implicate the Justice Department as the source of the disclosures if the nature of the information disclosed furnishes the connection.

*Id.* at 218 (footnote omitted).

The District Court correctly found that a *prima facie* case had been made out as to

---

**8.** *See also Cobbledick v. United States,* 309 U.S. 323, 328, 60 S.Ct. 540, 542–43, 84 L.Ed. 783 (1940); *In re Sealed Case,* 827 F.2d 776, 778 (D.C.Cir.1987).

**9.** While we recognize that two government officials have submitted affidavits saying that they were not involved in leaking grand jury matters, so many other officials were involved that these affidavits alone cannot serve as an effective denial of wrongdoing by the appellees.

one of the articles, and we find that at least one other suggests the same. Furthermore, this record contains a "whole spectrum of news articles," and "[t]he precise attribution of a source in one ... may give definition to a vague source reference in others because of their context in time or content." *Id.* at 219. In other words, the evidence here "militate[s] in favor of a further investigation of its source in the form of an evidentiary hearing." *Id.* The appellant has made out a *prima facie* case, and he cannot be expected to do more at this juncture of the litigation; complainants in Rule 6(e)(2) cases "almost never have access to anything beyond the words of the [news] report." *Id.* The appellees must now respond, because they are in the "best position to know whether [they are] responsible for a violation" of the Rule. *Id.* A show cause hearing is the proper step to take to make this inquiry, and such a hearing "carries little threat of conflict with the grand jury proceedings." *Id.*

On remand, and following a hearing, the District Court must determine whether the appellees have unlawfully disclosed matters occurring before the grand jury. If the trial court finds that such a practice existed or continues to exist, it must provide whatever relief is necessary to remedy the problem. Consistent with the admonitions of *Bank of Nova Scotia* and *Deaver v. Seymour,* 822 F.2d 66, 69 (D.C.Cir.1987), however, we caution that the trial court should not award relief that would unnecessarily interfere with the grand jury proceedings. In the present posture of this case, we find no evidence that would support Mayor Barry's extraordinary requests that the trial court disclose the matters presented to the grand jury or limit the right of the U.S. Attorneys to apply for subpoenas.

### III. CONCLUSION

Because we find that Mayor Barry has made out a *prima facie* case of a violation

of Rule 6(e)(2), we remand the case to the District Court for a show cause hearing at which the appellees may respond to Mayor Barry's allegations. If appellees fail in their defense, the trial court must consider the appropriateness of further relief, considering the nature of the violation and what the trial court deems reasonably necessary to prevent further unlawful disclosures of matters before the grand jury.

REVERSED AND REMANDED.

SENTELLE, Circuit Judge, dissenting:

While I agree with the majority that the District Court correctly held that Barry stated no relief outside the confines of Rule 6(e)(2) of the Federal Rules of Criminal Procedure ("Rule 6(e)(2)"), I respectfully disagree with the majority's conclusion that he stated any entitlement to relief under that Rule. I recognize that the government has acknowledged that a cause of action could be maintained under Rule 6(e)(2), but find this unpersuasive. A concession by a party as to a matter of law, unlike a stipulation of fact, need not hinder a court from finding the proper legal view. *See NLRB Local 6 v. FLRA,* 842 F.2d 483, 485 nn. 6 & 7 (D.C.Cir.1988). Thus, despite "the apparent stipulation of the parties," Majority Opinion ("Maj. Op.") at 1324, I submit the proper view is that the contempt remedy for violation of the secrecy requirement of Rule 6(e)(2) is criminal, rather than civil, in nature. In reaching this view, I recognize that the reported decisions from the Fifth and Eleventh Circuits support the majority's view rather than my own. *In re Grand Jury Investigation (Lance),* 610 F.2d 202 (5th Cir.1980) ("*Lance*"); *Blalock v. United States,* 844 F.2d 1546, *reh'g denied en banc,* 856 F.2d 200 (11th Cir.1988); *see also United States v. Eisenberg,* 711 F.2d 959 (11th Cir.1983).[1]

I believe that the true nature of contempt proceedings for violation of the se-

---

**1.** I do not read the decisions from the Sixth, Eighth, and Fourth Circuits, cited by the majority, Maj. Op. at 1321, as supporting its result. *In re Antitrust Grand Jury,* 805 F.2d 155 (6th Cir. 1986); *In re Hunter,* 673 F.2d 211 (8th Cir.1982); and *In re Grand Jury Subpoenas, April, 1978,*

581 F.2d 1103 (4th Cir.1978). All deal with Grand Jury irregularities, but do not address whether the nature of contempt punishment for Rule 6(e)(2) secrecy violations is civil or criminal.

crecy requirement is set forth in the concurring opinion in *Blalock*, 844 F.2d at 1552 (Tjoflat, J., concurring). In that unusual decision, both judges deciding the case (Judges Tjoflat and Roettger) expressed their view in a separate concurrence from their own opinion.[2] As the majority here notes, the "official" opinion of the court did hold that Rule 6(e)(2) made available a remedy for breaches of secrecy by way of civil contempt. *Id.* at 1550–51. However, in their special concurrence, the judges agreed that were they not bound by the prior panel opinion in *Lance* they would reject it "as insupportable," since "any reasonable interpretation of Rule 6(e)(2) ... forecloses the notion that the Rule provides a right of action for injunctive relief, enforceable by the district court's civil contempt power." *Id.* at 1553.[3] Since we are not so bound, I would not inject into the decisional stream of this Circuit the virus already infecting the Fifth and Eleventh Circuits due to the *Lance* exposure. I commend to the interested reader the extended and scholarly discussion of civil versus criminal contempt in Judge Tjoflat's concurrence and briefly summarize its contents which express my own view of the law on this subject.

As the majority here notes, the difference in civil and criminal contempt distills to an examination of the purposes the two contempts are designed to achieve. *See* Maj. Op. at 1324. Criminal contempt is "punitive, not remedial" and vindicates the authority of the court by punishing the person guilty of the contempt. *Blalock*, 844 F.2d at 1558 (Tjoflat, J., concurring). *See also Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441–42, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). Civil contempt is designed to force compliance with orders of the court on behalf of the complainant, normally the beneficiary of the relief granted under such order. *Blalock*, 844 F.2d at 1559 (Tjoflat, J., concurring). *See also*

*United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). The nature of the relief reflects the identity of the prosecutor of each sort of contempt. "The party in whose favor the order has been entered initiates the civil contempt proceeding." *Blalock*, 844 F.2d at 1559 (Tjoflat, J., concurring). As to "proceedings at law for criminal contempt," these "are between the public and the defendant." *Gompers*, 221 U.S. at 445, 31 S.Ct. at 499. The target of the Grand Jury in the case of a Rule 6(e)(2) violation may, of course, bring violations to the attention of the court. Indeed, like any other citizen, he should report to the court or the United States Attorney such violations of federal law. But, "[t]he bringing of a criminal contempt proceeding is a matter committed to the sole discretion of the district court or the prosecutor." *Blalock*, 844 F.2d at 1561 (Tjoflat, J., concurring). The complaining "target" is no more a party to the proceeding than a victim witness in any other criminal case, and no more than a victim witness does he have the right to initiate a prosecution. *Cf. Kienle v. Jewel Tea Co.*, 222 F.2d 98, 100 (7th Cir.1955) (following *Gompers*, 221 U.S. at 444–45, 31 S.Ct. at 499).

I agree with the concurring judges of the Eleventh Circuit that Congress has chosen the criminal, rather than civil, route in its 1977 amendment to Rule 6(e)(2), which created the present contempt remedy. *See Blalock*, 844 F.2d at 1558 (Tjoflat, J., concurring). The relevant sentence of the Rule reads as follows: "A *knowing* violation of Rule 6 may be *punished* as a contempt of court." (Emphasis added). This language makes apparent the criminal nature of the relief created. As Judge Tjoflat noted, "[t]he word 'knowing' implies that criminal intent is a prerequisite to a finding of contempt. Criminal intent is not an element of civil contempt." *Blalock*,

---

**2.** The case was originally heard by the usual three-judge panel, but was decided by a quorum of the panel when a member of the original tribunal recused himself after oral argument. *Blalock*, 844 F.2d at 1548 n. *.

**3.** Since the Eleventh Circuit was created out of the old Fifth Circuit, decisions of the latter handed down on or before September 30, 1981, such as *Lance*, cannot be overruled by a panel of the Eleventh Circuit, but only by the en banc Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) *en banc*.

844 F.2d at 1558 (Tjoflat, J., concurring) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); internal footnote omitted). Further, as noted above, remediation, not punishment, is the role of civil contempt. Punishment is the role of criminal contempt, and all the panoply of safeguards afforded criminal defendants protect the alleged contemner. *Gompers*, 221 U.S. at 444, 31 S.Ct. at 499. *Cf. Codispoti v. Pennsylvania*, 418 U.S. 506, 511–12 & n. 4, 94 S.Ct. 2687, 2691 & n. 4, 41 L.Ed.2d 912 (1974). Congress, therefore, could hardly have made it plainer in such a short pronouncement that it intended criminal rather than civil contempt.

The reason for Congress' choice of criminal punishment rather than civil coercion is likely related to the nature of the ends which each sort of contempt seeks to achieve. Under the *Lance* view, today adopted by the majority, civil coercion lies for unauthorized, unlawful release of material. It is difficult to see how such coercion could ever be efficacious. Typically, upon adjudgment of civil contempt, a court imposes the sanction likely to achieve compliance. For example, a judge jails the contemner until he complies. If civil contempt is employed against someone who has leaked Grand Jury material, how long does the judge keep him confined? Does he remain in prison until he somehow removes leaked information from the news media and crams it back into Grand Jury secrecy? This, of course, is impossible. Does the judge, on the other hand, impose a continuing sanction until the contemner promises not to leak any more Grand Jury information? This is hardly useful and does nothing to remedy the contumacious breach of Rule 6(e)(2).

On the other hand, punishment is directed at past breaches. Insofar as it prevents further breaches, it acts with the same deterrent role as any other criminal penalty.

Before Congress adopted the contempt provision of Rule 6(e)(2), district courts had been prosecuting breaches of the common-law rule of Grand Jury secrecy for at least 80 years. *See* cases collected in *Blalock*, 844 F.2d at 1556–57 (Tjoflat, J., concurring). After Congress codified the common-law rule of Grand Jury secrecy by the enactment of Rule 6, this practice continued. *See* L. Orfield, *The Federal Grand Jury*, 22 F.R.D. 343, 402, 448 (1959). Nothing in the 1977 amendment adding the contempt provision indicated any intent to do other than codify the pre-existing practice.

The *Lance* rationale, already causing mischief in the orderly process of Grand Jury investigations in the Fifth and Eleventh Circuits, cannot help but interfere with our own. If Barry has a legitimate complaint about unlawful leaking (and on this I offer no opinion), then his proper course is to complain to the court or the United States Attorney about these acts of criminal contempt. It is for them to see to prosecution. Since Barry would not have standing to bring the action in the District Court *a priori*, he has no standing to appeal. I, therefore, dissent from the majority's reversal and remand, and would dismiss this appeal.