854 F.Supp. 41 (1994)
UNITED STATES of America, Plaintiff,
v.
Franklin Delano LÓPEZ, Defendant.
Cr. No. 93-386 (JAF).
United States District Court, D. Puerto Rico.
March 31, 1994.
Order Denying Reconsideration April 15, 1994.
*42 *43 Assistant U.S. Attys. Miguel A. Pereira and Epifanio Morales-Cruz, and Guillermo Gil, U.S. Atty., San Juan, PR, for plaintiff.
Edwin Quiñones, San Juan, PR and Alan R. Feuerstein, New York City, for defendant.

ORDER
FUSTE, District Judge.
Defendant Franklin Delano López has been indicted on nine counts of violating 18 U.S.C. § 1014 and two counts of violating 18 U.S.C. § 1343. López has filed a motion alleging that these criminal charges were brought against him as the result of selective and vindictive prosecution. He further contends that information about the grand jury proceeding in his case was made public in violation of Fed.R.Crim.P. 6(e), and that there has been a conflict of interest because a former Assistant U.S. Attorney later worked as his defense counsel. As a result, defendant requests further discovery and/or a hearing and/or a dismissal of the indictments.

Selective Prosecution
López first claims that he has been selectively prosecuted because he exercised his first-amendment rights by using his political influence to support a candidate other than the former U.S. Attorney for Puerto Rico, Daniel F. López-Romo, or various Assistant U.S. Attorneys, for the office of U.S. Attorney following the election of President William *44 J. Clinton. In addition, López contends that his public criticism of the U.S. Attorney's office added to the decision to seek an indictment against him, when similarly situated persons have not been prosecuted.
It is axiomatic that the power to prosecute cannot be wielded in a discriminatory or selective fashion. Wayte v. United States, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). However, we begin with the judicially-recognized presumption that prosecutors act in good faith. United States v. Saade, 652 F.2d 1126, 1135 (1st Cir.1981). In order to make a prima facie showing of selective prosecution, the defendant must show that (1) other persons similarly situated have not been prosecuted for actions similar to those which defendant is alleged to have committed; and (2) the government's selection of defendant for prosecution was based upon such impermissible considerations as the desire to prevent the exercise of his constitutional rights. United States v. Peñagarícano-Soler, 911 F.2d 833, 837 (1st Cir. 1990) (citations omitted). An evidentiary hearing on a selective prosecution claim should be granted if the defendant alleges sufficient facts tending to show selective prosecution, and raising a reasonable doubt about the appropriateness of the prosecution's purpose, unless the government presents countervailing reasons. Id. at 838. We find that there is not sufficient evidence that the defendant has been treated differently from similarly situated persons and, therefore, decline the request for further discovery or a hearing on the selective prosecution claim.
Defendant bases his claim of selective prosecution on the affidavit of Miguel Lausell, the Chairman of the Board for Ponce Federal Bank. Mr. Lausell indicates that during his tenure with the bank, he has been informed of many potential bank fraud violations which were referred to law enforcement. Of these cases, in Mr. Lausell's experience, most were settled on the civil side, and very few terminated in an indictment and prosecution. We ordered, and the government complied, by providing the court for in camera analysis, a statistical history of closed and pending bank fraud cases. After perusing the listing, we find that there is no merit to the defendant's claim of selective prosecution. Of sixty-two active bank fraud investigations, six cases (including defendant's) have resulted in an indictment, nine cases are pending before the grand jury, two have undergone a change of plea, five are in pretrial diversion, and the remaining forty are awaiting review or advice. The history of closed cases extending back to 1983 similarly shows that Mr. Lausell's experience is not indicative of the actual state of affairs. Out of 365 cases, forty-five resulted in either a plea of guilty or a guilty verdict following a trial, seventeen cases were dismissed, and prosecution was declined on the remaining cases, for a variety of reasons, including lack of a substantial federal interest. In addition, the government has outlined the guidelines utilized by the Department of Justice in determining whether to prosecute bank fraud. Such cases are prosecuted when the financial loss exceeds $100,000, when the loss is caused by a defendant who is an officer, director, owner or majority shareholder or when multiple borrowers are involved. Given the explanation of the prosecution guidelines, and the statistical history, we cannot find a colorable basis for the claim that López has been treated differently than others who are or have been similarly situated.

Vindictive Prosecution
López further argues that he is the victim of vindictive, retaliatory prosecution because of his criticism of former U.S. Attorney Daniel López-Romo, and his refusal to support López-Romo or other Assistant U.S. Attorneys for the position of U.S. Attorney. López' claim of vindictive or retaliatory prosecution is a variation on the theme of selective prosecution. A discretionary prosecutorial decision cannot be made in order to punish a criminal defendant for the exercise of his constitutional rights. See United States v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (prosecutor threatened to increase charges if the defendant refused to plead guilty and insisted on a jury trial); U.S. v. P.H.E., Inc., 965 F.2d 848, 853 (10th Cir.1992) (prosecution motivated by *45 a desire to discourage First Amendment expression is barred).
Prosecutorial vindictiveness may be established in two ways: By producing evidence of actual vindictiveness sufficient to establish a due process violation or by alleging circumstances which establish a sufficient likelihood of vindictiveness to warrant a presumption that such a desire swayed the actions of the prosecutor. U.S. v. García-Rosa, 876 F.2d 209, 232 (1st Cir.1989), cert. denied, Alvarez v. United States, 493 U.S. 1030, 110 S.Ct. 742, 107 L.Ed.2d 760 (1990).
Mere unsupported allegations are not sufficient to establish a presumption of retaliation. Id. In determining whether there exists a realistic likelihood of vindictiveness, courts may examine the prosecutor's stake in deterring the defendant's exercise of the constitutional right, and actions taken by the prosecution. U.S. v. Andrews, 633 F.2d 449 (6th Cir.1980), cert. denied, Brooks v. United States, 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981).
López argues that he has been retaliated against because of (1) stories critical of López-Romo which aired on WSJN-TV when López was the President-Editor of the station, and López' refusal to support López-Romo's bid to continue in his office; (2) López' refusal to endorse Assistant U.S. Attorney Osvaldo Carlo for the position of U.S. Attorney; (3) his filing of two formal complaints against the Puerto Rico U.S. Attorney's Office with the Office of Professional Conduct, Department of Justice, Washington, D.C.; and (4) his criticisms of López-Romo and the U.S. Attorney's office in the media. López suggests that by bringing charges against him, the U.S. Attorney's Office sought to "neutralize" his influence in the nomination of the new U.S. Attorney.
The actions taken by the prosecution do not reveal a sufficient likelihood of vindictiveness to warrant a presumption of bad faith. As discussed above, there is not sufficient evidence that López has been singled out for prosecution, which belies his claim of malicious prosecution. See U.S. v. Adams, 870 F.2d 1140 (6th Cir.1989) (prima facie case of prosecutorial vindictiveness found where similarly situated persons had not been prosecuted, and defendant recently filed a sex discrimination claim against her governmental employer).
We also do not find evidence that either of the men which López adorns with discriminatory motives took actions which warrant a presumption of retaliation. The television news stories about López-Romo appeared in 1988, four years before the investigation into López began. The investigation of López was initiated in February of 1992, prior to the election of President Clinton and at a time when only a psychic would have known that López, as a Democrat, might later have influence over the selection of the next U.S. Attorney. In addition, López-Romo had resigned his position well before the indictments against López were handed down. There is no evidence that Osvaldo Carlo, who is the Chief of the Civil Division of the U.S. Attorney's Office, had any inside knowledge of, or influence over, the decision to prosecute López. These unsupported allegations do not create a presumption of prosecutorial misconduct.
As to the complaints filed against the Puerto Rico U.S. Attorney's Office, we have examined, in camera, the correspondence between López, acting U.S. Attorney Charles Fitzwilliam, the court-appointed interim successor Guillermo Gil,[1] and Michael E. Shaheen, the counsel for the Office of Professional Responsibility. We have also looked at the letters sent by López to Ms. Lula Rodriguez, a Special Assistant to the U.S. Attorney General. We are satisfied that the government had legitimate reasons for pursuing the indictment of López, and cannot find a realistic likelihood of vindictiveness in the mere existence of complaints about the Puerto Rico U.S. Attorney's Office.
López also alleges vindictiveness in the superseding indictment filed against him with additional counts after López indicated *46 that he would be filing various motions in this case. The government notified the defendant as early as the judge-presided status conference on January 18, 1994, that a superseding indictment might be filed. The tone of the discussion at that conference convinces the court that the decision to bring a superseding indictment was made in a professional manner. While the prosecution was aware that the defense would be filing motions, this is to be expected in a criminal case, and that knowledge is certainly not sufficient to warrant a presumption that the superseding indictment was filed in response and for vindictive reasons. See Goodwin, 457 U.S. at 381-82, 102 S.Ct. at 2493.

Rule 6(e)
Defendant next suggests that the indictment should be dismissed due to violations of Fed.R.Crim.P. 6(e)(2), which provides:
A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules.
In order to obtain a hearing on an alleged Rule 6(e)(2) violation, the defendant must make a prima facie case of such a violation. Barry v. U.S., 865 F.2d 1317, 1321 (D.C.Cir.1989). Where, as here, the relief requested is dismissal of an indictment, the defendant bears a heavy burden in establishing a prima facie case. In re Grand Jury Investigation, 610 F.2d 202, 219 (5th Cir. 1980). In determining whether media reports have established a Rule 6(e) violation, courts should consider whether the reports actually disclose information about what occurred before the grand jury and whether the source of information was likely one of those persons listed in the rule. Id. at 218. In addition, in order to obtain a dismissal of an indictment for errors in the grand jury proceeding, there must be a finding that the errors were prejudicial to the defendants such that they influenced the grand jury's decision to indict. Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). Only four of the articles which have been brought to our attention are directly related to the grand jury proceedings. Two of these articles appeared in El Vocero and El Nuevo Día on July 8, 1993. Both articles attribute their information to "sources", and allege that one of the illegal loans being investigated by a grand jury was solicited from First Federal Savings Bank by defendant. The third article appeared in El Vocero on October 20, 1993. This article attributes its information to "credible sources" and discusses the fact that witnesses had appeared before the grand jury, details about the loan under investigation, and the predicted timetable of the request for an indictment. The article also notes that the case has been processed with "sepulchral silence". The fourth article, published in El Vocero on February 25, 1994 (following both the indictment and the superseding indictment), cites "El Vocero sources" and merely states that charges have been filed and that the grand jury will continue to hear witnesses.
All of the articles attribute their information to unnamed sources, an identification which has been found too vague where defendants have requested dismissal of the indictment for Fed.R.Crim.P. 6(e) violations. In re grand jury Investigation, 610 F.2d at 219, n. 14. See also In re Special April 1977 Grand Jury, 587 F.2d 889, 892 (7th Cir.1978). In addition, the information revealed in the articles does not specifically refer to testimony in front of the grand jury and does not necessarily suggest that the information came from the proceedings themselves. Such news do not implicate Rule 6(e), and neither does information as to actions taken by government attorneys, or information which could have come from government investigation prior to empaneling the grand jury. Id. at 216-17. Finally, we note that López does not argue that the grand jury was wrongly influenced in its decision to indict, but that the news articles served to neutralize his influence in the appointment of the new U.S. Attorney. Even if such allegations are true, those are not the concerns which Rule 6(e) is meant to protect.
*47 This court has taken in the past, and continues to maintain, a strong stance against any leaks to the media which may compromise the integrity and confidential nature of grand jury proceedings. For this reason, we have carefully examined the allegations made by Mr. López, but have failed to find any evidence of wrongdoing on the part of the U.S. Attorney's office. We trust that such circumspection will continue to be the norm.

Conflict of Interest
Finally, López claims that he has been prejudiced because his former attorney, Luis Plaza, had been an Assistant U.S. Attorney and was involved with López' case prior to going into private practice. López claims that this is a violation of the Code of Professional Responsibility and of 18 U.S.C. § 207, which provides criminal sanctions against government employees who become involved in certain matters after leaving government service. Even assuming that an actual conflict of interest was present in this situation, which has been disputed by the government, the purpose of the norm prohibiting attorneys from working against a prior client is to protect the former client. See, e.g., ABA Model Rules of Professional Conduct, Rule 1.9 cmt. ("Disqualification from subsequent representation is for the protection of former clients and can be waived by them"). Common sense dictates that any injury flowing from a scenario in which a prosecutor becomes a defense attorney for a client who has been indicted by his former office would accrue to the government. Certainly there is no ground for dismissing the indictments on this basis.
This order disposes of Docket Document Nos. 23, 24, 25, and 26. See also Docket Document Nos. 27 and 29.
IT IS SO ORDERED.

ORDER ON RECONSIDERATION
Defendant, Franklin Delano López, has moved for reargument and reconsideration of this court's order of March 31, 1994, denying defendant's motion for dismissal of the indictment against him or, in the alternative, evidentiary hearings on various issues. In particular, defendant objects to the finding of this court that there were no grounds to dismiss the indictment based upon an alleged conflict of interest on the part of Luis Plaza, a former Assistant U.S. Attorney ("AUSA") who the defendant claims became his defense attorney for a brief period of time before the filing of the indictment. Because Plaza was involved with the investigation of López prior to leaving government service, defendant argues that at least a hearing, and at most dismissal of the indictment, is in order.
Plaza was involved in the initiation of the investigation of López, in early 1992. His involvement included signing a subpoena for records from the First Federal Savings Bank and recommending that the Mr. Juan Becerra, of the Federal Bureau of Investigation, become the agent of the grand jury. According to the government, the investigation of Mr. López did not begin in earnest until July of 1993, some eight months after Plaza left the U.S. Attorney's office.
López argues that there has been a violation of his constitutional right to due process as a result of the inherent conflict of interest under which Mr. Plaza was laboring during his representation of López. López alleges that there has been a showing of actual prejudice as a result of the conflict of interest, in that Plaza may have initiated the investigation into López while an AUSA, with a secret plan to later leave the government and gain financially through the representation of López. As for the remaining government attorneys, López contends that they neglected to inform López of the fact that Plaza had previously worked on the case, in order to use Plaza as a conduit to gain influence with López in seeking his endorsement for the position of U.S. Attorney.
We start with the knowledge that "[f]ederal courts have the power and duty to dismiss federal indictments obtained in violation of the Constitution or laws of the United States," and that such courts may also use their "supervisory power ... to dismiss an indictment because of prosecutorial misconduct." In re Grand Jury Proceedings, 700 F.Supp. 626, 628 (D.P.R.1988).
The Due Process Clause of the Fifth Amendment provides protection to criminal *48 defendants prior to indictment and before the Sixth Amendment right to counsel attaches. United States v. Marshank, 777 F.Supp. 1507, 1519 (N.D.Cal.1991). During this period, a violation of the due process clause may occur if government interference in an attorney-client relationship results in ineffective assistance of counsel, or if the government engages in outrageous misconduct. Id. López bases his argument that there has been a due process violation which requires the dismissal of his indictment on Marshank. In that case, an indictment was dismissed after the defendant's attorney collaborated with the prosecutors in order to establish a case against defendant, bring about his arrest, and attempt to coerce defendant to cooperate with the government. The pervasive misconduct of the government in using Marshank's attorney to build a case against defendant, and knowingly allowing the attorney to continue to represent Marshank, was a violation of the defendant's constitutional rights. The court found that the "taint of the government's constitutional transgression infected every part of the investigation and prosecution of the defendant. There is no means other than dismissal of the indictment to remedy the due process violation which occurred." Marshank, 777 F.Supp. at 1523.
Unlike Marshank, there is no contention here that the government caused Plaza to render ineffective assistance to López. López suggests that Plaza failed to seek a civil agreement to settle the case, and advised López to file formal complaints against the U.S. Attorney's office, in an effort to make indictment more probable, so that Plaza could recover additional attorney's fees. Although there is absolutely no proof of any of these allegations, even if we assume them to be true, the scenario fails to establish that the prosecutors' interference caused Plaza to render ineffective assistance. In Marshank, the government worked with the defense attorney to develop a case against defendant, and took advantage of the conflict of interest which existed in the attorney-client relationship. Marshank, 777 F.Supp. at 1519. At most, López has alleged that the U.S. Attorney's office was aware of the existence of a potential conflict of interest, and failed to notify him of it.[1] But this is not the type of activity which was found to be unconstitutional in Marshank: "While the government may have no obligation to caution defense counsel against straying from the ethical path, it is not entitled to take advantage of conflicts of interest of which the defendant and the court are unaware." Id.
A violation of due process may also be found in the pre-indictment stage of criminal proceedings when the conduct of the government is outrageous, in the sense of being fundamentally unfair, or shocking. United States v. Santana, 6 F.3d 1, 4 (1st Cir.1993). The First Circuit noted in Santana that two types of outrageous conduct have been recognized by the courts: Extreme physical or psychological abuse of the defendant, and actions of law enforcement personnel which may be said to have either created the crime, or coerced the defendant to participate in the criminal activity. Id. Again, the only assertion against the government here is that the U.S. Attorney's office failed to notify López that Plaza had, at one time, worked on the investigation. Such a failure is not analogous to what happened in Marshank, does not reach the level of egregious misconduct, and was not a violation of López' constitutional rights.[2]See, United States v. Simpson, 813 F.2d 1462, 1468 (9th Cir.), cert. denied, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987) (government's passive tolerance *49 of misconduct less prejudicial than conscious wrongdoing).
Not only do we find no constitutional error, but we see no reason to utilize our supervisory power to dismiss the indictment in this case on the basis of prosecutorial misconduct. The First Circuit has advised that federal courts should refrain from using supervisory power to dismiss charges, absent cognizable prejudice to a particular defendant. United States v. Santana, 6 F.3d 1, 11 (1st Cir.1993). See also United States v. Batista, 834 F.2d 1 (1st Cir.1987) (supervisory power should only be utilized to dismiss an indictment in egregious cases of misconduct). United States v. McDade, 1992 WL 187036, 1992 U.S.Dist. LEXIS 11450 (E.D.Pa.1992), is instructive. In that case, the defendant, a U.S. Congressman, alleged that the U.S. Attorney had an actual and apparent conflict of interest which tainted defendant's indictment, because the attorney had previously been employed by Senator Arlen Specter. McDade alleged that because of that relationship, the U.S. Attorney had a reason to focus the investigation into illegal campaign contributions upon McDade and away from Specter. The court found that where there was no evidence that the alleged conflict of interest influenced the grand jury's decision to indict, there was no basis for utilizing the supervisory power to dismiss the indictment. In this case, even assuming, as defendant claims, that Plaza began the investigation of López with the nefarious plan to later earn money from defending him, we find no evidence that the decision to indict, made well after the departure of Mr. Plaza from government service, was influenced by this alleged conflict of interest.
We also find the second case on which López relies, United States v. Schell, 775 F.2d 559 (4th Cir.1985), to be inapplicable to the situation at hand. In Schell, the court found that where an attorney, after representing a client, joins the criminal prosecution of that client with respect to the identical matter about which the attorney originally counseled the client, a per se finding of prejudice is mandated. This finding is rooted in the fact that the client cannot be secure that information revealed to counsel will remain confidential when the attorney subsequently becomes involved in the prosecution of the same client, regarding the same matter. The opposite situation is not necessarily analogoushere, no attorney-client relationship with the defendant existed until after the prosecutor left the service of the government. If anything, there may be a concern that Plaza could have shared government strategy or information with his new client. For example, in United States v. Kitchin, 592 F.2d 900 (5th Cir.), cert. denied, Kitchin v. United States, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979), the court granted the government's motion to disqualify the defendant's attorney, because he worked in the same firm as an attorney who had previously been involved in Kitchin's case as a prosecutor. Looking to the ABA Code for guidance, the court found that "a lawyer may not accept employment representing interests adverse to those of a prior client. The purpose of this rule is to ensure the confidentiality of information received in the service of a previous employer." Id. at 904.
Contrary to López' view, we do not move from the premise that a client should be able to disqualify his former attorney from working for the opposing side on a matter in which the attorney previously participated on the client's behalf, to the presumption that a current client should be able to disqualify the entire U.S. Attorney's Office, and dismiss the indictment against him because he hired an attorney who previously worked on his case while employed as a prosecutor.[3]
In sum, while we do not make any finding as to whether Mr. Plaza's behavior was in violation of the Ethics in Government Act or any other disciplinary rules, we find nothing *50 in López' contentions which would require a hearing or a dismissal of the indictment.
IT IS SO ORDERED.
NOTES
[1] 28 U.S.C. § 546(d) provides that when there is an interim vacancy in an office of U.S. Attorney, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled."
[1] López' suggestions that Plaza "agitated" the government in order to bring about the indictment for financial reasons, and that Plaza may have divulged false or misleading information to the government in order to obtain an indictment, have absolutely no factual basis. We fail to understand López' contention that the misconduct of Plaza is borne out by the fact that López has been selectively prosecuted, as our previous order put to rest the theory of selective prosecution.
[2] Even if we were to accept López' claims that the motivation of various AUSAs in hiding the fact of Plaza's previous involvement in the investigation was to gain López' support for the office of U.S. Attorney, we note that the motivation is irrelevant as the action itself did not result in a constitutional violation.
[3] Mr. López correctly points out than an additional reason to prevent former government attorneys from switching sides, by entering private practice and continuing to work on matters with which they were involved during government service, is to forestall the possibility of government attorneys developing suits for the purpose of monetary gain upon their return to the private sector. See Laker Airways Ltd. v. Pan American World Airways, 103 F.R.D. 22 (D.D.C.1984). However, this concern generally arises in civil cases, where the problem can be remedied by the disqualification of, and possible disciplinary action against, the former government attorney.